## S. W. BARNES v. R. SOWDEN AND WIFE.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 19, 1888—Decided February 27, 1888.

|119|53|
|137|45|
|119|53|
|166|590|
|119|53|
|181|274|

| 119 | 53 |
| 21 SC | 10 |
| 119 | 53 |
| f220 | 275 |

Where, in an action to recover damages for injuries from a fall of the plaintiff into a ditch cut across a city pavement, there was no conflict in the testimony that the defendant was lawfully engaged in making the excavation, that he was conducting the work with care and dispatch, and that the plaintiff could not have failed to observe the presence of the obstruction, it was error to refuse to instruct the jury to find for the defendant.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 192 July Term 1887, Sup. Ct.; court below, No. 871 December Term 1886.

On December 31, 1886, an action for negligence was begun by Richard Sowden and Lillie, his wife, in right of said wife, against Samuel W. Barnes.

At the trial on May 6, 1887, under the plea of not guilty, it

appeared that on November 30, 1886, Samuel W. Barnes by his employees, was engaged in opening a trench for a drain-pipe from the street across the pavement to the front of Lyon's store, at No. 2226 on the west side of North Front street. About 10 : 30 A. M. the trench was dug from the car-track to the curb, and from the curb to within 3 ft. 7 in. of the store. At that hour Mrs. Sowden with her sister, Mrs. Burns, were walking southwards on the west side of Front street, and stopped at the north bulk window of the store. Mrs. Burns after a moment passed on to the south window and calling Mrs. Sowden's attention, the latter stepped rather backwards, continuing to look in at the window she left, and fell into the end of the trench and was injured. The facts, with the condition of the trench, fully appear in the opinion of this court.

At the close of the plaintiff's case, the defendant moved for a compulsory nonsuit, which was refused. When the testimony was closed on both sides, the defendant requested the court to charge the jury : That, under all the evidence, the verdict should be for the defendant.

The court, WILLSON, J., refused the defendant's point and charged the jury as follows :

It is undoubtedly the right of all persons who use the highways of the city to walk along those highways. They have a right there, and it is their right to expect to find those highways in a proper condition for travel, and if any work is going on, either done under public supervision or private order and direction, it is their right to presume that, if there be such work going on, there shall be something in the way of a warning to indicate to them that they must be careful at that particular point; and it is the duty of any person, whether he be a public officer or private citizen, when he makes an excavation in the highway, to do whatever is reasonably proper for the purpose of guarding those who use the highways against receiving injury from the existence of such an excavation; but it is not the duty of any person who is making such an excavation to do what will absolutely prevent any injury. It is not the duty of such a person, either public or private in his relations to the work, to build a wall around the excavation so that it would be impossible for a person to stumble or

fall into it or to climb over it. All that any person engaged in such work is bound to do under such circumstances, is to do that which in view of the ordinary uses of the highway would be sufficient, that is, provide a sufficient warning to those who are using the highway.

Now it was a perfectly lawful thing which the defendant was engaged in doing. It seems, according to the evidence, that he was engaged in the excavation of a trench under the orders of one of the public departments of this city. That does not make his case either better or worse. But he had a right to do what he did in the excavation of that trench, and he is to be protected in that right. He has just as good a ground to appeal to you, in case you believe upon the whole case that the evidence shows he was not negligent, or shows that the plaintiff was negligent, and ask you to find a verdict in his favor as the plaintiff has, if the facts are otherwise upon the evidence, to ask you to find a verdict in her favor. . . . . .

The question, therefore, upon this branch of the defendant's negligence comes down to this: Did he do all that he ought to have done, with a reasonable regard for the rights of people that were using that highway? Did he do all that he was bound to anticipate or to think he ought to do, in order to afford a sufficient warning to those who were using the highway? If he did, that is an end of the case, and your verdict must be for the defendant. What more ought he to have done? It is said here that he should have put up a rail alongside of that trench. Now, if you are of the opinion or belief, upon the evidence, that he put a pile of dirt there in the neighborhood of three feet high, of what use would a rail have been? If you believe that he did that, that he put along the whole length of the north side of that trench, practically, or very near to the end of it, by reason of the excavation and throwing out of the dirt from the pit, a pile of dirt in the neighborhood of three feet high, what more ought he to have done? Was not that all that was reasonably requisite to warn any person who was using the highway in a proper manner? Was he bound to consider that any other obligation than that was resting upon him? Was there any disregard of the rights of the public, of persons using the highway, if he did so much? . . .

Now, a person, occupying the position which the defendant

Charge of Court below.

did at that time, was not bound to put any warning or barrier which would afford a protection to people who were reckless and careless in the use of the street or highway. Persons who walk along the footways or cross the streets of our city are bound to use their own faculties. They are bound to use their eyes and their hearing. You and I would have no right to walk along the footways of the city with our eyes closed, and then, if we stumbled into a trench, attempt to hold the city, or any person who might be doing such work, responsible for a broken leg. That would be simply absurd. . . . .

Now this plaintiff, according to her own testimony and the testimony of her sister, who was with her, was out upon what the ladies would call a shopping expedition, and they were looking into the windows as they went along. That they had a perfect right to do. When they got to this store, Lyon's store, they looked into it at some goods which they saw there and walked along past it. The plaintiff says she stepped off from the cellar door, which was elevated only slightly above the level of the pavement, two or three inches, according to the testimony, took one step, and then stepped off the end of this trench into it, and received the injury which followed. She says she did not see the trench, and did not see the pile of dirt, if there was any pile there; that she saw nothing of the kind, and the first she knew of the trench was when she slipped off and fell down into it.

Now, was she taking due and proper care of herself? Upon the plaintiff's case alone, and you heard what I said to the counsel arguing the motion for a nonsuit, I should undoubtedly have taken a very different view of the liability of the defendant in this case from what, upon all the evidence, if I were sitting where you are sitting, I should probably take. I regard the evidence which has been produced here on the part of the defendant as altering very much the way in which I as a man and you as jurors ought to look upon this case, if that evidence is to be believed.

The plaintiff was bound, when she was walking along there, no matter what her purpose in going was, while she had a right to use the highways, to use her faculties in an ordinary way. She was bound to do what an ordinarily prudent and careful person would do for her own protection; she was

bound to use her eyes. Not that she was to keep her eyes constantly and at every moment upon the pavement upon which she was walking, but she was bound to do what people walking along the streets ought to do as they ordinarily walk and use the streets in order to use them at that time safely.

Now, do you think that a woman walking along the street where there was a barrier consisting of a pile of earth several feet in height, if there was such a barrier there before her, in broad daylight, for some distance, was doing what was prudent and careful; do you believe that she could have been, in failing to see that, and then stumbling into the end of the trench and thereby getting hurt? The evidence of some of the defendant's witnesses is that when she was first taken out she said with an exclamation as to the nature of her injury, " Oh! it was all my own fault; I was not looking where I was going." She says she does not remember saying that, and her sister says she does not remember that she said it, but there is the evidence of several witnesses who were and are apparently disinterested to the effect that she did say that.

But it is argued on the part of the plaintiff that this was a remark which was made when she was in a condition of confusion, and perhaps hysteria or great excitement. She probably was in such a state of excitement, but if she made the remark, would the state of excitement account for such a remark, if that was not the conviction of her own mind at the time ? It has been argued to you if she had come here and said upon the stand, " That was my own fault; I did not look where I was going, and I met my injury in consequence," that would be and ought to be the end of the case, and the court would dispose of the case very quickly on such testimony; but it is my duty in this trial to leave the evidence to you, and I do it with full confidence that you will apply the principles of law which I have stated, and which you ought and are bound to do under your oaths. If she was careless and received the injury in consequence of her carelessness, the law says she cannot recover, and it is your duty to apply that law where the facts justify it. . . . . .

The jury returned a verdict in favor of the plaintiff for $300; a rule for a new trial was discharged, and judgment

entered on the verdict. Thereupon the defendant took this writ assigning as error the refusal to charge that under all the evidence the verdict should be for the defendant.

*Mr. E. Cooper Shapley* (with him *Mr. James E. Gorman*), for the plaintiff in error :

The case should have been ruled in favor of the defendant on either of two grounds : (1) The carelessness of plaintiff in walking backward into the trench; (2) or, her bounden duty to observe the trench, which was plainly observable : Pitts. South. Ry. Co. v. Taylor, 104 Pa. 306; Durkin v. Troy, 61 Barb. 437; Erie City v. Magill, 101 Pa. 616; Crescent Tp. v. Anderson, 114 Pa. 643; Butterfield v. Forrester, 11 East 61; Smith v. Smith, 2 Pick. 621 (12 Amer. D. 464) ; Allyn v. Railroad Co., 105 Mass. 77. There was practically no contradiction of testimony and the case should not have been submitted to the jury : Pass. Ry. Co. v. Trich, 117 Pa. 390 ; King v. Thompson, 87 Pa. 365.

*Mr. H. B. Gill* (with him *Mr. James B. McCarron*), for the defendants in error :

The question of the contributory negligence of the plaintiff was for the jury. True, when the plaintiff fails to comply with certain fixed rules laid down by the courts and governing the circumstances; for instance, before crossing a railroad track, would fail to stop, look and listen, or, knowing the danger, would voluntarily accept a risk which he might avoid, the court may direct a verdict for the defendant. But where the standard of duty shifts with the circumstances of the case, when the question is simply whether or not the plaintiff exercised ordinary care, it must always be left to the jury : Schum v. Penn. R. Co. , 107 Pa. 8 ; Nanticoke Borough v. Warne, 106 Pa. 373; Penn. R. Co. v. Peters, 116 Pa. 206. The cases cited by the defendant are all predicated on a knowledge of the danger, and a failure to avoid it when possible.

OPINION, MR. JUSTICE WILLIAMS :

The single assignment of error in this case is to the refusal of the court below to give a binding instruction to the jury to find for the defendant. Whether such an instruction should

have been given or not depends upon whether there was any question of fact for the determination of the jury when the evidence closed. If there was such a question, the court was right in submitting it; if there was not, it was error to turn over to the jury what was really a question of law. A brief summary of the evidence is necessary to an intelligent discussion of this question.

On the 30th of November, 1886, Barnes, with three laborers, began at eight o'clock A. M. to dig a trench from the sewer in the street to the premises at No. 2226 North Front street, Philadelphia, for the purpose of making connection with the sewer. At half-past ten the trench had been opened from the car track in the street to the curb, and from the curb across the footwalk towards the store about eight feet, leaving a passage of about four feet wide between the end of the excavation and the house line. The earth was thrown up on the north side of the trench, making a bank of loose dirt three feet high and five feet broad at its base, extending its whole length, except that the bank sloped down to the walk at the inner end. On the outside of this bank a hand-cart and some of the tools used in digging had been left. Mrs. Sowden and her sister Mrs. Burns were coming down the footwalk towards No. 2226. The bank of earth, extending for eight feet into the walk, and more than half as high as their heads, was directly before them. They passed up to the store windows on the unbroken strip of walk next the building, and Mrs. Burns passed beyond the ditch to the southernmost window. Mrs. Sowden stopped in front of the northernmost window opposite the end of the trench. When she left the window, instead of going forward to where Mrs. Burns stood, she took two or three steps backward and fell into the trench. This action is brought to recover damages for an injury sustained from this fall.

There was no question made about the fact that the defendant was lawfully engaged in making the excavation, nor was there any allegation that the work was not being done with reasonable dispatch. There was not a particle of conflict in the testimony or of uncertainty as to the actual facts. The plaintiff's case depended on whether upon the ascertained facts she had a right under the law to charge her injuries over to the defendant. This raised two questions: first, Had the

defendant used sufficient care to protect the public from the excavation? and, next, Was the plaintiff guilty of contributory negligence?

It is not easy to see how the defendant could have placed a larger or more striking line of obstruction in the path of the plaintiff than the mound of earth which extended for eight feet from the curb and to within four feet of the house line. Whatever want of care might be charged to him so far as the unprotected side of the trench is concerned, he had certainly fortified the side on which Mrs. Sowden was approaching very thoroughly. She was coming directly towards the bank of earth which had been thrown up in the process of digging. In the language employed by this court in the City of Erie v. Magill, 101 Pa. 616, "it was conspicuous both as to its extent and character, and necessarily obtruded itself upon the attention of every passer along the walk." It was impossible to overlook it, for it stretched across the walk to within four feet of the building, and it was necessary to go close to the inner edge of the walk in order to get around it. The plaintiff had accomplished this, and stopped at the store window opposite the end of the trench. The exercise of the slightest care would have prevented the fall of which she complains. Upon these facts the court was called upon to say whether the defendant had taken sufficient precautions to protect one coming from the north against falling into the trench, and if this was in any doubt, whether the plaintiff was not guilty of contributory negligence. There was no legal presumption of negligence to take the place of proof and carry this case to the jury, but the plaintiff had to establish her right to recover. If on the uncontradicted evidence she failed to show negligence on the part of defendant, or showed herself guilty of contributory negligence, it was the duty of the judge to give a binding instruction: Hoag v. L. S. & M. S. R. Co., 85 Pa. 293; King v. Thompson, 87 Pa. 365; Hayman v. Penn. R. Co. (decided at the present term), 118 Pa. 508.

It is not always an agreeable duty to take a case from the jury. The situation of a party may enlist our sympathies to such an extent as to make the duty distasteful even when it is apparent; but if a judge fails, in a case like the present, to meet his responsibilities fully and fairly, the jury are almost

certain to follow his example. The result may be that a defendant is compelled to pay for the folly of the plaintiff for no better reason than that he is able to pay and the plaintiff needs the money. True kindness, even to impecunious and unfortunate suitors, requires an impartial and uniform application of legal rules in the trial of causes. This case is one in which a binding instruction should have been given. The plaintiff came in open daylight down the walk in full view of an obstruction three or four feet high stretching across the pavement almost to the house line. She could not fail to see it. She went around it safely, became interested in some goods displayed in a window, and backed into the trench. A clearer case of contributory negligence it would be hard to find.

Judgment reversed.