## LENA BACON v. DELAWARE ETC. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 16, 1891—Decided May 27, 1891.
[To be reported.]

1. For a person to attempt to get upon a railroad train, while it is in motion, is negligence per se: wherefore, when a passenger, while engaged .in such an attempt, fell under the cars and was killed, no recovery could be had against the railroad company for his death, even though his fall was occasioned by a defect in the station platform.

2. In an action for the death of a passenger killed at a station by a train, the plaintiff's narr averring, in effect, that the deceased received the injuries of which he died while walking upon the station platform for the purpose of getting on the cars of the moving train, the testimony on both sides tending to establish this averment, a verdict for the defendant was properly directed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 240 January Term 1891, Sup. Ct.; court below, No. 192 February Term 1887, C. P.

On January 28, 1887, Lena Bacon brought trespass against the Delaware, Lackawanna & Western Railroad Company, to recover damages for the death of the plaintiff's husband. The statement of claim filed averred, inter alia:

That on October 12, 1886, the defendant company was the owner, and was in possession and use of a certain railroad, locomotive-engine, cars, station, and passenger platform at the village of Nicholson, Wyoming county, all which were under the charge, government and direction of servants of the defendant, "who were then and there driving and propelling the

said locomotive-engine and cars along and upon the said railroad at the said station and platform;" that the defendant negligently maintained the said platform, so that it was in certain places full of holes and defective and unsafe for persons to walk upon; "that through the mere carelessness, negligence and improper conduct of the said defendant, the plaintiff's husband, Arthur Bacon, being lawfully upon the said platform at said station, as a passenger on the cars of said defendant, and while in the act of walking upon said platform for the purpose of getting on the cars of said defendant, in the night-time, his foot sank into a hole in the said platform, thereby causing him to be thrown with force against and under the moving train of cars at the platform and station aforesaid, by means whereof the said Arthur Bacon, plaintiff's husband, was greatly bruised, hurt and wounded, so that afterwards, to wit, on the twelfth day of October, 1886, at the county aforesaid, he died of said wounds;" etc. The defendant pleaded not guilty.

At the trial on June 13, 1890, the following facts were shown:

On October 12, 1886, an excursion party went from Scranton to Hiawatha Island, N. Y., under the auspices of a lodge of the Junior Order of United American Mechanics, returning the same evening. Both going and returning, the cars occupied by the excursionists were attached to a regular passenger train on the defendant company's railroad. The plaintiff's husband, Arthur Bacon, residing at Scranton, formed one of the party, having purchased an excursion ticket through the committee of the lodge in management of the excursion.

On the return trip, the train reached Nicholson, one of its regular stopping places, about 7.23 P. M. At that place, the conductor was informed that the pump of the locomotive was out of order, and that it would be necessary to get the assistance of another engine to move the train to Scranton. He reported this by telegraph to the proper officer, and asked for the necessary order. While the order was awaited, the train stood on the track in front of the station, and the plaintiff and other passengers got off and passed the time upon the platform. Orders having come to use a freight engine, the train was backed up some distance above the station, where the freight

Charge of Court below.

engine was attached to it. It then started on its way. While it was moving past the station at the rate of from three to four miles an hour, according to the testimony for the plaintiff, or four to five miles an hour, according to the testimony for the defendant, Bacon, who until that time had remained standing on the platform, talking with some friends, walked rapidly across the platform toward the train, and when close to it he fell forward against the end of one of the cars and then under the car. Both his legs were cut off by the car wheels, and he died that night from the wounds thus received.

The plaintiff called two witnesses who described the accident. Their testimony, parts of which are quoted in the opinion of the Supreme Court, infra, tended to show that Bacon's fall was occasioned by his catching his foot in a hole close to the edge of the station platform, left unrepaired for months, and that at the instant of falling he was facing the train and was about opposite the platform of one of the cars. Each of these witnesses said that he did not know whether the deceased was trying to get on the train or not. For the defendant, a number of witnesses testified that Bacon was in the act of attempting to get on the cars when he fell. Several witnesses testified for the defendant that, before the train was backed away from the station, the conductor gave warning to the passengers to get on by calling out "all aboard" twice; one of them testifying, further, that the conductor called out also that the train would not stop at the station as it came back, and that the witness thereupon warned the deceased to get on board before it started, to which the deceased replied that he was used to jumping trains. This testimony was not contradicted, though one of plaintiff's witnesses testified that he did not hear the conductor cry "all aboard." There was some evidence also that the deceased appeared to be partly intoxicated, and evidence to the contrary in rebuttal.

At the close of the testimony, the court, WOODWARD, J., charged the jury as follows:

This action is for alleged negligence resulting in accident and death, and is brought by the legal representative, the widow of the deceased.

To recover damages in this case, it was necessary for the

Charge of Court below.

plaintiff to show, first, that the defendant was guilty of negligence which caused the accident resulting in the death of the deceased; and [secondly, the court must be satisfied from the evidence, that if the negligence of the company has been established, it has not been shown that negligence of the deceased concurred with that of the company in producing the result. Or, to put it in a different form, if the judge trying a case, after a careful examination of all of the evidence submitted, is satisfied that this evidence establishes the fact of concurring negligence at the time of the disaster, on the part of the person injured, then it is his duty to take the responsibility of saying, under the rules of the law, there can be no recovery.] [1]

Now, we have examined this case with these legal rules in view, and our examination results in this:

1. The declaration in this case alleges negligence on the part of the defendant company; also, that the deceased was upon the platform at the company's depot, with the intention of boarding the cars.

[2. The evidence shows that the deceased was injured while making an effort to board the train of cars while it was in motion.] [2]

[3. The evidence also shows that the deceased, while making an effort to board the train in motion, was distinctly warned of the danger of so doing, but insisted on making the effort, notwithstanding the warning.] [3]

A thorough analysis of the evidence in the case compels us to say that these three statements are a fair deduction from the undisputed facts, and it therefore becomes our duty to affirm the third point of the defendant, which reads as follows:

3. Under the undisputed testimony of the plaintiff, it having been shown that the decedent purchased a ticket for the excursion from Scranton to Hiawatha Island and return, that he was a passenger on the train returning to Scranton, and that he got out of the train at Nicholson, an intermediate station, of his own volition, and attempted to get on the train again when it was in motion, he was of his own action guilty of contributory negligence, and the verdict must be for the defendant.

Answer: In affirming this point, we say, after examining the law, we find it to be the general rule, leaving out of view ex-

Arguments.

treme cases and emergencies, that the attempt to board a train in motion, is negligence ; and we see nothing in the present case to take it out of the effect of this general rule.    It is therefore our duty, on this question of contributory negligence, to affirm the third point of the defendant; and this results in our being obliged to say to the jury, as matter of law, the plaintiff cannot recover in this action ; and we so instruct you.    The verdict should be for the defendant.[4]

I am requested by the plaintiff's counsel to charge you :

1. That the deceased had a right, under the evidence in the case, to be upon the passenger platform at Nicholson.

Answer: That point we affirm.

2. If the injury done to Mr. Bacon was the result of carelessness and negligence on the part of the defendant, without fault on the part of the deceased, plaintiff may recover in this action.

Answer: As a legal proposition, that is correct, although we are unable to apply it in the present case ; we therefore affirm it as a legal proposition.

3. If the jury believe that on the approach of the train at a speed of between three and four miles an hour, Mr. Bacon left a party of friends with whom he had been conversing on the station platform, and walked towards the train, intending to enter a car after the train had stopped, and that without negligence on his part, and not having attempted to board the moving train, he caught his foot in a hole, as described by the witnesses on the part of the plaintiff, and was thereby thrown under the car and injured, plaintiff may recover.

Answer: We decline to affirm that point, because we do not think it is justified by the evidence in the case, and it is disaffirmed.[5]

—The jury returned a verdict for the defendant.    Judgment having been entered thereon, the plaintiff took this appeal, assigning for error :

1–3. The parts of the charge embraced in [  ] [1 to 3]

4. The answer to defendant's point.[4]

5. The answer to plaintiff's point.[5]

*Mr John Lynch,* for the appellant :

If there is doubt upon the question of contributory negligence, the case must go to the jury : Kohler v. Railroad Co.,

Opinion of the Court.

135 Pa. 346; Fisher v. Railway Co., 131 Pa. 292. This case was taken from the jury on the testimony adduced by the defendant. In the testimony for the plaintiff, neither by inference, construction, nor word, does it appear that Bacon was injured while attempting to board a moving train. It was for the jury to say whether he made such an attempt, and if he did, whether it was such conduct as made him guilty of contributory negligence: Pass. Ry. Co. v. Boudrou, 92 Pa. 475; Kohler v. Railroad Co., 135 Pa. 346. Moreover, it was the duty of the railroad company to erect and keep in repair a safe platform at the station. Although he had left the cars at a way station, Bacon was still a passenger, and entitled to protection as such: Wood's Railway Law, §§ 1046, 1047; Cussman v. Railroad Co., 73 N. Y. 606; 9 Hun 618; Keokuk etc. Packet Co. v. True, 88 Ill. 608; Jeffersonville etc. R. Co. v. Riley, 39 Ind. 568; Pittsburgh etc. R. Co. v. Krouse, 30 Ohio St. 222.

*Mr. Henry W. Palmer* (with him *Mr. Andrew H. McClintock*), for the appellee:

It is perfectly plain from the testimony for the plaintiff that the deceased was in the act of boarding the train when he fell, and the court properly held this to be contributory negligence: Railroad Co. v. Aspell, 23 Pa. 147; McClintock v. Railroad Co., 21 W. N. 133; N. Y. etc. R. Co. v. Enches, 127 Pa. 316; Harvey v. Railroad Co., 116 Mass. 269. Was not the negligence of the deceased so clear that the court could not have supported a verdict for the plaintiff? If so, the ruling of the court must be sustained: Kohler v. Railroad Co., 135 Pa. 346. We insist that, not merely the testimony for the plaintiff, but all the evidence not in dispute is to be considered: Hoag v. Railroad Co., 85 Pa. 293; Barnes v. Sowden, 119 Pa. 53. But, in any event, the defendant owed the deceased no duty as to the condition of the station platform at Nicholson. When he got off the train at a way station, he surrendered for the time being the character of a passenger: 2 Wood's Ry. Law, 1134; State v. Railroad Co., 58 Me. 176.

OPINION, MR. JUSTICE GREEN:

If the plaintiff's husband was killed while he was attempting

to get upon a moving train, she cannot recover, because, notwithstanding the negligence of the defendant in having a defect in the platform, his death was caused in part by his own negligence, and the law will not discriminate between his negligence and that of the company. If there was doubt, or if there was conflicting evidence, as to his being engaged in an attempt to board the train while in motion, it would have been necessary to leave that question to the jury; but, if there was no doubt about it, and the undisputed testimony proved it, it was the duty of the court to pronounce upon it by a binding instruction to the jury to find a verdict for the defendant. This was what the learned court below did, and, upon a thorough examination of the testimony, we are convinced the court was right.

The first and one of the most important considerations upon this subject is that the plaintiff in her narr declares that her husband was attempting to get upon the defendant's cars when the accident occurred. The language of the narr is that "the plaintiff's husband, Arthur Bacon, being lawfully upon the said platform at said station, as a passenger on the cars of said defendant, and while in the act of walking upon said platform for the purpose of getting on the cars of said defendant, in the night-time, his foot sank into a hole in the said platform, thereby causing him to be thrown with force against and under the moving train of cars at the platform and station aforesaid, by means whereof the said Arthur Bacon, plaintiff's husband, was greatly bruised, hurt, and wounded, so that afterwards, to wit, on the twelfth day of October, 1886, at the county aforesaid, he died of said wounds."

It is difficult to understand how there could be any more solemn assertion than this, by the plaintiff herself, that her husband received his injuries of which he died while walking upon the platform for the purpose of getting on the cars of this moving train. It is her declaration of her cause of action, upon which she asks the court and jury to act in adjudging her case. As a matter of course, it is binding upon her, not only because she asserts it, but also because, upon this subject, there is no issue between her and the defendant. The defendant also asserts, and gave evidence to prove precisely what the plaintiff alleged, to wit, that the injury was received while her husband was walking on the platform for the purpose of

getting on the cars of the defendant's moving train. We know of no reason why this consideration alone does not dispose of the case. It is, however, very easy to show that all the evidence in the case, on both sides, tended to establish this averment of the narr.

The plaintiff herself testified that her husband had gone on an excursion train, which left Scranton at 8 o'clock in the morning to go to Hiawatha Island, expecting to return about the same time in the evening; also that he bought his ticket for the round trip from one of the members of the lodge. He was therefore undoubtedly intending to return upon the same excursion train upon which he left. All of the other testimony established that in the evening, on the return, the train stopped at Nicholson station, and in consequence of some defect in the pump of the engine it became necessary to attach another engine in front of the train. For this purpose, the train was backed up above the station, past a switch, over which the second engine could run on the track and then back up and be attached to the train. All this was done, and the train then started and ran on without stopping at the station. While the change was being made, a number of the passengers left the train, and stood upon the platform for some little time. Among these was the plaintiff's husband. After the train had stood a short time at the depot, the conductor called out, " All aboard," twice, and many of the passengers got on. This was proved by overwhelming testimony, and was entirely uncontradicted. One of the witnesses, Lee, who was one of the excursionists, testified that the conductor said " ' All aboard; wont stop when we get up to the station again,'—wanted everybody to get on. That is the way I understood it." Then the train started to back up, and after the engine was attached, started to go on the return. The train was passing the depot at a moderate rate of speed, estimated at four or five miles an hour, when the deceased moved towards it, and attempted to get on.

The plaintiff examined two witnesses to prove what was done the moment before the accident. One of them, Seymour Pratt, said: " My attention was called to a man that passed by me walking quite fast, middling fast, as the train was going, walking the same direction. and he turned facing the car, and caught his

Opinion of the Court.

foot, and fell between the car and the platform." The witness. further said he did not know whether the deceased was trying to get on the train, or to see somebody, or what he was calculating to do. " Q. Was the train going faster than he was, or was he going faster than the train? A. About the same speed. Q. You say he was walking fast? A. Quite fast. Q. Did he catch hold of the rail? A. No, sir; I don't think he did. Q. Did he reach for it? A. He reached out as he fell. Q. How far was he from the opening between the platform of the cars when he fell? A. He was about the end of the cars. Q. That is, he was near the platform of a passenger car? A. Yes, sir." There is no possible theory with which this testimony is consistent, except that the deceased was endeavoring to get upon the car when he fell. The other witness for the plaintiff upon this subject, W. S. Knapp, said: "I saw him a few minutes before he was hurt, and I saw him shortly after he was hurt; I was the second man that was up to him. . . . . I saw him start toward the edge of the platform. What his object was, whether to get on the train, or what, I could not say, and I saw him act as though his foot was fast going like that (indicating) toward the train. Q. As he was falling? A. As he was falling. That is all I can tell you about it." This testimony also is consistent only with the theory that the deceased was endeavoring to get upon the train. He had a ticket which included his return to Scranton. He was one of the excursionists, and they were all returning by this particular train. He merely left the train temporarily, and got off on the platform at this small way station. There is not a particle of testimony that he intended to remain at the station or to leave the train at that point. On the contrary, all the testimony, as well for the defendant as for the plaintiff, shows with conclusive force that he was intending to return with the party and to get upon the train for that purpose.

According to the plaintiff's witnesses, he was close to the train, walking fast. He turned towards the train, facing it, and reached out the moment before he fell. Lee, one of the defendant's witnesses, was with him when the train was backing up. He was asked: " Q. Did you get on? A. No sir; I took hold of this gentleman's arm, and tried to walk down the track with him. Q. You walked down in the direction the train

Opinion of the Court.

was going? A. In the direction the train was backing up.
Q. Whose arm did you take hold of? A. Mr. Bacon's, the gentleman that got killed; he was a friend of mine.  Q. Where did you leave him?  A. He would not go any further; when we started off the platform, said he was not afraid; he was a trainman; he could jump a train anywhere.  Q. What did you say to him when you took him by the arm to lead him down?  A. I says 'Go, get on, because don't you hear the conductor say he wont stop when he gets up again?  They will send down to Factoryville for another engine.'  Q. After he left you or you left him, where did you go?  A. Got on the train."  The same witness said he saw Bacon again when the train came down, standing by the freight house door.  "Q. Alone?  A. Yes, sir; seemed to be.  When I seen him he was making efforts to come towards the train. . . . He made pretty good time.  I hollered at him, 'Young man you cannot make that.  Mr. Bacon, for God's sake, stay back; you will get killed.'  He grabbed with his hands, and his foot did not make it."  Caygell, another witness for the defendant, was a member of the band that went with the excursion.  He said: "I heard the conductor holler, 'All aboard.'  He hollered 'All board;' my partner with me said, 'Come, let's go on;' so I walked back with him.  We got on, and when she pulled out again I stood on the steps of, I think it was the third car, on the head end; and as we came into the depot, I noticed this gentleman, Mr. Bacon, talking with some ladies, and he seemed to bid them good-by, and came running forward to the car to the steps I stood on.  As he came up he took hold of the hand-iron with his left hand, and instantly she bumped him off his feet and slammed him up against the side of the car.  Then he fell in behind the first wheels of that car.  Then I jumped up and caught the bell wire, and pulled it, and that is all I know."  Sarah E. Pratt was one of the ladies with whom Bacon was conversing on the platform of the station, and she said: " He stood there talking with us all the while that the train stood there, and while it backed up; and I don't remember whether he started from us before the train came back or not, I cannot tell; and he walked down the track, and I saw him make the attempt to get on the train, and supposed he did. . . . . Q. Whether the train was in motion, going rapidly or otherwise?  A. I thought it was going quite fast.  Q. You say he

made the attempt to get on the train, just describe how he did that? A. I saw him reach his hands out to take hold of the car, and I supposed he got on the car."

There was other testimony of a similar character, but it is not necessary to repeat it. There was no testimony of any kind, or from any witness, tending in the least degree to contradict the evidence as to Bacon's attempt to get on the car the moment before he fell. It proves nothing to show there was a hole in the platform. While it is not at all certain that his foot was caught in the hole, it is a matter of no consequence in determining the question of the negligence of the deceased in attempting' to get on· board of a moving train. That attempt was an established fact, first asserted by the plaintiff in her narr, then proved substantially by her own witnesses on the trial, and proved most conclusively by other and disinterested witnesses for the defandant, who were entirely uncontradicted, and the whole of the oral testimony conclusively corroborated by all the attending facts and circumstances. This whole array of concurring proof shut out every inference or conclusion but the one that the deceased was attempting to board the train while it was in motion, and the court had no alternative except to pronounce upon the undisputed state of the testimony. It is not necessary to cite authorities that it is negligence for one to attempt to get upon a train of steam railroad cars while they are in motion.

Judgment affirmed.