Mary E. Lumis and Lewis H. Lumis *v.* Philadelphia Traction Company, Appellant.

[Marked to be reported.]

*Negligence—Street railways—Contributory negligence—Defect in street.*

In an action against a street railway company to recover damages for personal injuries, it appeared that plaintiff, a woman, pushing a baby carriage with a little child in it, started from the north side of a street to cross two tracks of the railway. At the time of the accident a trench had been opened which extended westward from the western crossing stones, a little to the south of the railway tracks. The dirt from the trench was thrown up between it and the southern track. There were three lines of crossing stones, some of which, across the trench, were torn up. The stones which had been taken up were lying upon those still in place. About three or four feet to the east of the crossing was a manhole in a direct line with the trench. The space between the flagstones and the manhole was clear, and was sufficient for the baby carriage to pass through. When the plaintiff reached the second track she heard a car about a half square away; she got off the track, pushed the carriage off also, changed its course, and, without looking where she was moving, fell into the manhole while the car was still moving, although it stopped at a distance of ten or fifteen feet away from the crossing. *Held,* that the plaintiff was guilty of contributory negligence, and could not recover.

It is the duty of every pedestrian upon a public highway to use reasonable care for his own safety and to avoid an open or apparent danger.

Argued Jan. 7, 1897. Appeal, No. 336, Jan. T. 1896, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1895, Nos. 1170 and 1171, consolidated, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed. STERRETT, C. J., dissents.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The facts appear by the opinion of the Supreme Court.

Defendant's point and answer thereto was as follows:

1. That there is not sufficient evidence in this case to charge the defendant with negligence, and therefore the verdict should be for the defendant. *Answer:* Refused.

Verdict and judgment for plaintiffs for $4,000. Defendant appealed.

*Error assigned* was above instruction, quoting it.

*J. Howard Gendell,* for appellant.—The plaintiffs did not observe due care: Barnes v. Sowden, 119 Pa. 53; King v. Thompson, 87 Pa. 365; Dehnhardt v. Phila., 15 W. N. C. 214; Phila. v. Smith, 23 W. N. C. 242; Dickson v. Hollister, 123 Pa. 421; Buzby v. Traction Co., 126 Pa. 559; Stackhouse v. Vendig, 166 Pa. 582; Seddon v. Bickley, 153 Pa. 271; Farley v. Traction Co., 132 Pa. 58.

*Henry M. DuBois,* for appellees.—Any one negligently leaving an obstruction or creating a defect in the highway is at once liable to the party injured, and the injured party may at once, if he so elects, sue the wrongdoer who is ultimately liable: Angell on Highways (3d ed.), sec. 300; 2 Dillon on Municipal Corporations (4th ed.), secs. 1032, 1034; Philadelphia v. Weller, 4 Brewster, 24; Gates v. Penna. R. Co. 150 Pa. 50; Fritsch v. Allegheny, 91 Pa. 228; Penna. R. Co. v. McTighe, 46 Pa. 316; Schum v. Penna. R. Co., 107 Pa. 8; Lee v. Woolsey, 109 Pa. 124; R. R. Co. v. Nolthenius, 40 Ohio, 376; McMahon v. Second Ave. R. R., 75 N. Y. 231; Kraut v. Ry., 160 Pa. 335.

If a person is put in a position of sudden peril by the negligence of another, and in an instinctive attempt to escape from that peril falls upon another, he is not chargeable with negligence because under other circumstances he might and ought to have seen and avoided the latter danger: Vallo v. U. S. Ex. Co., 147 Pa. 404; Penna. R. Co. v. Werner, 89 Pa. 59; Baker v. North East Boro., 151 Pa. 234; Booth on Street Railway Law, 520.

Being on the highway with impaired vision or hearing is not negligence, per se: Wharton on Negligence, sec. 307; Davenport v. Ruckman, 37 N. Y. 573; Phila. v. Weller, 4 Brewster, 24.

OPINION BY MR. JUSTICE GREEN, April 26, 1897:

The plaintiff, Mrs. Lumis, at the time of the happening of the accident in question, was pushing a baby carriage with a little child in it, in an effort to cross Market street from north to south on the west crossing of 34th street. There were two tracks of the defendant's road, one on the north carrying west bound passengers, and the other, on the south carrying east bound travelers. She started from the northwest corner of the two streets and this was her account of her movement: "Then I intended to cross Market street but stopped for a moment to see if there were any cars coming. Another lady with a baby coach passed me and I went on across the street, across the car tracks, and before I was aware of anything I had the wheels of the coach right on a bank of dirt, the front wheels of the coach. I could not roll it over it and I went back on the other side to get up on the other side. As I started forward I heard the gong of the cable car ringing and I did not have time to cross the track again. Then I turned to the east. I could not go back for the car, nor forward for the pile of dirt. I stepped to the left side for about two steps and found I was falling." She added that she fell to the bottom of the hole. This is a very imperfect and confused account of what happened. It would not be possible to define the precise circumstances without resorting to her cross-examination and to the other testimony in the case. She seems to say that she went all the way across the street and across the car tracks and then attempted to go back again but had not time to do so, and then she stepped to the left side and found herself falling. On her cross-examination she was asked: "Q. What did you do? A. Started to the south side of Market. Q. Did you go straight across? A. I stopped at the pile of dirt. Q. Where was it? A. Half way between the car track and flagging. Q. Where was it in relation to the track before you got to the west bound track or between the two tracks? A. Between the south track and the pavement. Q. What did you do after that, did you go right across? A. No sir. I could not roll the carriage over the pile of dirt; I intended to go back. Q. Did you go back? A. I could not because the car was coming. I was standing with my whole person on the south track and the car was coming on that track, going east toward the Delaware on the same track I was going

on.   A part of the coach was right over the track. . . . Q. How far away from you was the car when the gripman rung the bell? A. Not half a square."

As the plaintiff was on the track and the front wheels of the carriage also, and the car nearly half a square away there was nothing to prevent her from drawing the carriage back over the track.   It would require but an instant of time and there was no peril in immediate prospect that would justify an irresponsible movement because of sudden apprehension of imminent danger. She chose to divert the course of the carriage in another direction moving backward as she did so.   As a matter of fact the car stopped about ten or fifteen feet away from the crossing, but she had already fallen before the car stopped.   She was asked: " Q. Did it stop before it got to you ?   A. I do not know where he stopped ; I fell before he stopped the car."

It is therefore a fact established by her own testimony and not contradicted by any one, that she got off the track herself, pushed the carriage off also, changed its course and herself moved backward without looking where she was moving, and fell into the manhole while the car was still moving and before it stopped at a distance of ten or fifteen feet away from the crossing.   This was proved by another of the plaintiff's witnesses, Fibble, who was asked, " Q. The car stopped before it got to the crossing?   A. Yes sir.   Q. Far away?   A. About ten or fifteen feet away.   Q. Entirely stopped before it was at the crossing?   A. Yes sir ; I gave him great credit for that."

Now it is too plain for argument that the movement she did make necessarily took more time than would have been required to complete her act of recrossing the track, as she was already almost across and part of the carriage was also on the track. There was not the least obstruction in her way, there was no actual peril, and there was no reason to apprehend an immediate danger because the car was so far away when she first saw it. Nearly half a square is quite a considerable distance in which there was opportunity for crossing and recrossing the track several times before the arrival of the car at the crossing.

All of the foregoing is said in contemplation only of the plaintiff's personal testimony as to the occurrence.   Her other testimony by other witnesses, proves a far more damaging state of facts as to her right to recovery.   All the witnesses who

describe the crossing concur in saying that it consisted of three courses of flagstones in width, of which one was taken up, and the other two remained in place. The plaintiff's witness, Fibble, was asked: " Q. Did you measure the width of the flagstone; how large a passage was there for a pedestrian? A. No, sir. I did not measure that; there were two flagstones. Q. The two flagstones were bare? A. Yes, sir. Q. A good foot passage for most people to walk across? A. Yes, sir; the third one was taken up, and she was on the third one. The two wheels was on the third one from the north corner crossing. Q. Is that where the pile of dirt was? A. Yes, sir, after she crossed. Q. She was not crossing the flagstone, but on the dirt? A. Yes, sir; she was crossing on the flagstone, the third one? Q. It was bare except at that one place? A. Yes, sir. Q. The baby coach struck the pile of dirt? A. Yes, sir. . . . Q. The flagstones were clear until she got to the western flagstone and that was taken up? A. Yes, sir."

This was the only witness, other than the plaintiff, who saw the whole of the accident and described it. George Young, another witness for the plaintiff testified as to the crossing. After saying he saw the lady pulled out of the hole, he was asked: " Q. Do you know where that hole was? A. About nearly four feet of the west crossing, and about eighteen or twenty inches from the railroad track on the south side. Q. Was there any dirt piled up? A. There was no dirt on the crossing, and there was two cross stones not up. Q. What were those two stones? A. The cross stones, three rows, and two of them down and one taken up."

Charles E. Taylor, another witness for the plaintiff, testified: " Q. The dirt was piled how high? A. There was no dirt around the manhole. Q. Not immediately around the manhole? A. No sir. Q. Between the manhole and the crossing there was dirt? A. No sir, we tunneled the crossing and the dirt was thrown out back of the crossing. Q. The dirt was between what? A. Between the crossing and the pole. Q. What pole? The feed pole, the trolley pole? A. The pole the wires are strung on. Q. The dirt was between that? A. Between that and the manhole and not between the manhole and the crossing. Q. What was between the manhole and the crossing? A. The crossing was perfectly clear. Q. No dirt on the cross-

ing?   A. Not to my knowledge."   Mr. Fibble, who seems to be the only witness who took any measurements said the distance from the manhole to the flagstone was thirty-five to forty inches and from the manhole to the track about twenty-one inches.   So there seems to have been a clear space of about three feet to the flagstone which was entirely unobstructed. There is a little doubt as to whether the two rows of flagstones were obstructed at that point growing out of the rather confused testimony of Young on cross-examination.   On his examination in chief he conveyed the idea that the two rows of flagstones were in place and were clear.   On his cross-examination he says two cross stones were lying on the other crossing stones. Whether he meant on other crossing stones of the third row from which two were taken up or on the two rows of crossing stones which had not been disturbed is uncertain.   But it is of no consequence since while in the latter event they might have constituted a slight obstruction, of the thickness of the flagstone, it is entirely uncontradicted that there was no bank of earth there and that there was a space of at least three feet of the pavement between the flagstones and the manhole that was entirely clear, and as this was of itself more than sufficient for the baby carriage to pass through, it was a clear act of negligence on the part of the plaintiff not to pass through over that space.   When it is considered that the trench was only eighteen inches wide and three feet deep, and that when the crossing was reached the trench was tunneled underneath the flagstones, leaving the two rows of stones intact and only two stones of the third row taken up, and that the trench stopped on the west side of the crossing, and that there was no dirt around the manhole or between that and the flagstones, it will be perceived at once that there was ample space in which to move the baby carriage in safety if the slightest care had been taken by the plaintiff.   It is singular that no one asked her whether she moved backward toward the manhole or with her face toward it.   Her testimony is so very meager as to what she did, and how she moved when she turned the carriage that almost no information on this subject can be derived from it.   She simply says, " I stepped to the left side about two steps and found I was falling. I did not know where I was going but I let loose the handle of the coach and found I was going down.   I did not know where."

It would seem from this that the coach was behind her, but whether her face or her back was toward the coach she did not say and no one seemed to think it necessary to ask her. But so far as her legal duty was concerned it would matter but little which way her face was turned. If it was toward the manhole it was her clear duty to see it and avoid it. If it was toward the coach it was grave negligence to walk in that position on any street or sidewalk of the city. We think the case comes clearly within the line of a very considerable class of cases in which the legal duty of persons walking on the streets and sidewalks of cities and towns is clearly defined. The rule is thus expressed in Dickson v. Hollister, 123 Pa. 421 : "It is the duty of every pedestrian upon a public highway to use reasonable care for his own safety and to avoid an open or apparent danger."

In Barnes v. Sowden, 119 Pa. 53, the facts were quite similar to those of the present case. A trench had been dug about eight feet in length across the sidewalk, leaving a passage of about four feet in width between the end of the excavation and the house line. The earth was thrown up along the trench making a bank of loose dirt about three feet high extending the whole length of the trench. The plaintiff and her sister were coming along on the footwalk, and when they reached the trench they passed along the unbroken space between the trench and the building. When the plaintiff left the store window into which she had been looking she took two or three steps backward and fell into the trench and was injured. The court below left the case to the jury who returned a verdict for the plaintiff. On the single assignment of error for submitting the case to the jury and for not taking it from them with a binding instruction for the defendant we reversed the judgment without a venire. Our Brother WILLIAMS, delivering the opinion, said: "The exercise of the slightest care would have prevented the fall of which she complains. . . . The case is one in which a binding instruction should have been given. The plaintiff came in open daylight down the walk in full view of an obstruction three or four feet high stretching across the pavement almost to the house line. She could not fail to see it. She went around it safely, became interested in some goods displayed in a window and backed into the trench. A clearer case of contributory negligence it would be hard to find."

In Buzby v. Phila. Traction Co., 126 Pa. 559, the plaintiff had safely alighted from a car and was about to cross the street. He stepped upon another track and was struck by an approaching car and injured. Our Brother MITCHELL, delivering the opinion of this court, said, "But the case was tried below, and must be tested here, upon the universal rule which requires due and ordinary care in crossing public streets as in all other transactions of life. Even on the sidewalk, especially devoted to the use of foot passengers, a man is bound to look where he is going, and this duty is still more imperative when he is about to cross the middle of a street, where horses, wagons and cars have equal rights with himself, and where each is bound to take notice of such other rights and to use his own with due regard thereto." In King v. Thompson, 87 Pa. 365, the plaintiff passing along on the sidewalk in the evening stepped into an opening which projected sixteen inches from the building, and was injured. The court below having refused to affirm a point which asked for a binding instruction if the jury believed the facts stated in the point, we reversed the judgment on the ground that if the facts had been found as stated in the point the binding instruction should have been given. Mr. Justice PAXSON in the course of the opinion said "What are the facts here? A sidewalk ten feet wide; a paved space from seven to eight feet wide between the curb and trees on the one side and the opening at the cellar window on the other; the street lighted by a lamp in the window, and gas lamps in the street sufficient to have enabled the plaintiff to avoid the accident. It is really difficult to see how the plaintiff succeeded in getting into the hole. . . . It is proper enough to hold owners of property to a reasonable care over it, yet at the same time persons using public streets ought also to exercise some little caution." Another of our late utterances will suffice. In Robb v. Connellsville Borough, 137 Pa. 42, the plaintiff sued for an injury received by falling over the footway of a street crossing raised six inches above the level of the footway upon which she was walking. She was nonsuited in the court below for contributory negligence when it appeared from her own testimony that she could have seen the obstruction had she looked where she was going, and that her fall resulted from a failure to look. This court sustained the nonsuit. Mr. Justice MITCHELL, delivering the opinion, said "That

the reasonable care which the law exacts of all persons in whatever they do involving risk of injury, requires travelers even on the footways of public streets to look where they are going, is a proposition so plain that it has not often called for formal adjudication. But it has been expressed, or manifestly implied in enough of our own cases to constitute authority for those who need it." After reciting the facts as testified to by the plaintiff, we said, " The general result of her own testimony clearly is that she was not paying such attention as the situation required. This is concisely and forcibly summed up by the learned judge in sustaining the nonsuit, and his action must be sustained."

This was precisely the case here. The plaintiff paid no attention to where she was going, and failed to see the open manhole. She could easily have seen it if she had paid any attention to her steps. She was on a public street and bound to take reasonable care of her steps. She took no care at all and fell into an opening in the street in broad daylight which she could not have failed to see if she had simply looked where she was going. We think the case is ruled by those above cited.

The foregoing considerations convict the plaintiff of contributory negligence which precludes any recovery.

Judgment reversed.