## Sellers v. Union Traction Company, Appellant.

*Negligence—Street railways—Getting on car—Summer car—Defect in street—Contributory negligence.*

It is the duty of every pedestrian on a public highway to use reasonable care for his own safety, and to avoid an open and apparent danger. He who fails to meet this standard of duty is guilty of negligence.

In an action against a street railway company to recover damages for personal injuries, it appeared that the plaintiff about noon of a clear day wishing to take a west-bound car of the defendant company hailed an approaching one, which was of the summer type, having a running board along the side affording a means of entrance along the entire length of the side. The crossing of the street for pedestrians was composed of three parallel lines of flagstones. The defendant company maintained a circular manhole twenty-eight inches in diameter for the purpose of affording access to its underground wires, which was outside of and eleven inches distant from the north rail of its west-bound track, and the eastern edge of which was six feet west from the middle one of the three rows of flagstone crossings. This manhole was usually covered by an iron plate level with the street, but at the time in question the employees of the defendant company had removed the cover and were engaged in work at the opening. There was a covered dearborn wagon standing close to the north curb of the street and just west of the crossing, so that the opening in the street could not be seen by a person standing upon the sidewalk at the corner, but there was an unoccupied space of five or six feet between the dearborn wagon and the north rail of the track. The plaintiff having hailed the car walked out to the track on the middle row of the flagstone crossing; the car gradually slackened its speed and the plaintiff knowing that it had not stopped caught hold of the hand rails and walked along the

street sideways intending to get on to the car when it should come to a full stop; he walked in this way five or six steps when his course carried him into the manhole and he was injured. The running board of the car projected some distance north of the rails and covered when passing the manhole five or six inches of the opening exposed to view. There was no crowd present and nothing to prevent the plaintiff having a full view of the street in which he was walking. *Held* that plaintiff was guilty of negligence, and was not entitled to have his case submitted to the jury.

Argued Dec. 13, 1901. Appeal, No. 147, Oct. T., 1901, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1898, No. 756, on verdict for plaintiff in case of C. Cadwallader Sellers v. Union Traction Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before SULZBERGER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Thomas Leaming*, with him *Thad. L. Vanderslice*, for appellant.—Plaintiff was guilty of negligence. Lumis v. Phila. Traction Co., 181 Pa. 268; Busby v. Phila. Traction Co., 126 Pa. 559; Hentz v. Somerset Borough, 2 Pa. Superior Ct. 225; Collins v. Second Avenue Traction Co., 7 Pa. Superior Ct. 318.

The Supreme Court of Pennsylvania has applied the principle to eighty-seven different varieties and separate acts of negligence, such as :. Walking into a cellar area at night when there is seven or eight feet of clear sidewalk, 87 Pa. 365; stepping backward into a monkey roller, 93 Pa. 475; failing to duck one's head when on top of a freight car passing under a low bridge, 92 Pa. 276; walking into escaping steam at the entrance to a mine shaft, 100 Pa. 301; walking upon a slippery ridge of snow in the street, 101 Pa. 616; driving a horse past an object calculated to frighten him, 104 Pa. 306; hanging one's legs over the side of a moving flat car, 113 Pa. 600; crossing a bridge where the planks have been removed for re-

pairs, 114 Pa. 643; walking backward into an open sewer, 2 Sup. Ct. Dig. 57; placing a horse in a field where the owner knows the fence is broken and the horse strays, 115 Pa. 431; stooping under a wire fence and running across a water drain to catch a train, 22 W. N. C. 42; stepping backward into an open ditch in the sidewalk, 119 Pa. 53; cutting a towboat line on which there was a severe strain whereupon the end of the loop of rope flies back and breaks plaintiff's leg, 3 Sup. Ct. Dig. 363; walking diagonally across planking and tracks at night instead of along the sidewalk, in the case of a cripple, 120 Pa. 559; stopping a dray so near the track that a street car strikes the hub, 132 Pa. 76; failing to row a boat out of the path of a ferry boat, 124 Pa. 154; putting a finger in the crack of a door of a vessel rolling in the sea, 23 W. N. C. 576; falling down a trap door which had been left open, but which was visible, 132 Pa. 617; driving a blind horse so close to a tree that the hub of the wagon strikes it and the horse goes over a precipice, 137 Pa. 122; getting off a train on the unusual side and stepping into a ditch lately dug and unguarded, 137 Pa. 352; placing a charge of dynamite in a hole in a state of intense heat, 140 Pa. 487; walking off a set of house steps without rails, 141 Pa. 564; coming out of a doorway, turning sharply around and tripping over a partly open cellar door, 166 Pa. 582; entering a cellar with a lighted lamp knowing a gasoline apparatus is out of order, and having been warned it is liable to explode, 187 Pa. 217.

And this court has followed the same broad principle and applied it to a variety of facts, such as: Where a woman walked along a sidewalk at night and tripped over the curled up edge of a plank, 2 Pa. Superior Ct. 225; where a conductor in leaving a car barn passed through a narrow space between a standing car and the door post, and was injured by the car starting, 7 Pa. Superior Ct. 318; where a driver tried to drive a nervous horse between some debris and a train passing alongside the highway, 14 Pa. Superior Ct. 145; where a man walked out between two car tracks and, instead of crossing in the ordinary way, proceeded to stoop to pick up a horseshoe without having looked to see whether anything was approaching, 15 Pa. Superior Ct. 350; where a woman was thrown into a stream by her bicycle coming in contact with a low log along the side of

a bridge, and the absence of the guard rail, such as was on the other side of the bridge, was " so conspicuous a danger that a reasonable use of eyesight would have avoided it," 17 Pa. Superior Ct. 537.

*James M. Beck,* with him *James C. Sellers,* for appellee.

OPINION BY W. D. PORTER, J., July 10, 1902 :

The plaintiff was, shortly before noon on July 12, 1898, at the northwest corner of Thirteenth and Arch streets in the city of Philadelphia. He wished to take a west-bound car of the defendant company and hailed an approaching one, which was of the summer type having a running board along the side affording a means of entrance along the entire length of the side. The crossing of Arch street for pedestrians was composed of three parallel lines of flagstones. The defendant company maintained a circular manhole twenty-eight inches in diameter, for the purpose of affording access to its underground wires, which was outside of and eleven inches distant from the north rail of its west-bound track, and the eastern edge of which was six feet west from the middle one of the three rows of flagstone crossings. This manhole was usually covered by an iron plate level with the street, but at the time in question the employees of the defendant company had removed the cover and were engaged in work at the opening. There was a covered dearborn wagon standing close to the north curb of Arch street and just west of the crossing, so that the opening in the street could not be seen by a person standing upon the sidewalk at the corner, but there was an unoccupied space of five or six feet between the dearborn wagon and the north rail of the track. The plaintiff having hailed the car walked out to the track on the middle row of the flagstone crossing ; the car gradually slackened its speed and the plaintiff knowing that it had not stopped caught hold of the hand rails and walked along the street sideways intending to get onto the car when it should come to a full stop ; he walked in this way five or six steps when his course carried him into the manhole and he was injured. The running board of the car projected some distance north of the rails and covered when passing the manhole five or six inches of the opening, leaving twenty-two or twenty-

three inches of the circular opening exposed to view. There was no crowd present and nothing to prevent the plaintiff having a full view of the street in which he was walking. The plaintiff testified explicitly that he took hold of the hand rails while the car was in motion and walked along the street intending to get on the car when it had fully stopped; and he testified further that the car did actually stop about the time he stepped into the manhole. There was nothing in the evidence to suggest that the plaintiff was misled, by any irregularity in the motion of the car, into the belief that it had stopped, or was about to stop, and that he took hold of the hand rails for the purpose of at once mounting the car, or that he was by any sudden acceleration of the speed of the car dragged along the street and dropped into the manhole. No threatening peril or sudden emergency had supervened which might have interfered with the use of the faculties and judgment of the plaintiff and exempted him from the exercise of that care which is required of those who walk in the cartway of a street. He was walking in the cartway of a street, and the fact that he had seen fit to take hold of the hand rails of a car which he knew to be moving did not relieve him from the duty of looking where he was going. There was no evidence that the eyesight or mental faculties of the plaintiff were not fully up to the average, and his conduct must be judged accordingly.

The plaintiff had not looked at that part of the street in which this open hole was an object that could not have escaped his observation. Being upon the middle flagstone he turned and walked westward along the cartway for at least six feet, with his eyes fixed upon the inside of the car and taking no care as to what obstacles or pitfalls his footsteps encountered. At noon upon a bright summer day a man in full possession of his faculties and threatened by no peril, stepped into an open hole in the street twenty-eight inches in diameter, which if he had been looking where he was going he must inevitably have seen. The only explanation of such an accident is that he was paying no attention to where his footsteps led him, and that is just what this plaintiff admitted to be true in his testimony in this case. It is the duty of every pedestrian upon a public highway to use reasonable care for his own safety and to avoid an open and apparent danger. He who fails to meet this

standard of duty is guilty of negligence. The facts in this case were undisputed; the plaintiff was walking in the cartway of the public street without looking where he was going, the danger into which he walked was open and apparent; the accident was unfortunate but it is clear that the negligence of the plaintiff contributed to the result, and it was the duty of the learned judge of the court below to so declare: Barnes v. Sowden, 119 Pa. 53; Dickson v. Hollister, 123 Pa. 421; Buzby v. Philadelphia Traction Company, 126 Pa. 559; Robb v. Connellsville Borough, 137 Pa. 42; Bacon v. Delaware, etc., R. R. Co., 143 Pa. 14; Lumis v. Philadelphia Traction Company, 181 Pa. 268; Hentz v. The Borough of Somerset, 2 Pa. Superior Ct. 225; Picard v. Ridge Avenue Passenger Ry. Co. 147 Pa. 195. The ingenious argument of the able counsel for plaintiff that this case is analogous to grade crossing cases, and that because the plaintiff looked where he was going when upon the sidewalk at the corner, from which point the dearborn wagon prevented his seeing this manhole, it was for the jury to say whether he looked at the proper place, does not seem to be sound. The danger which threatens at a grade crossing is from the rapid movement of a train over which he who is about to cross has no control, while the peril to the pedestrian from obstructions upon or holes in the street results from his own voluntary movements. The manhole in the street would have wrought no injury to the plaintiff if he had not turned and walked into it. The duty of the pedestrian is to look where he is going while he is going, and every time he turns a corner. The defendant was entitled to the binding instruction for which it asked and the judgment is reversed.