SARAH SOLOMON, as Administratrix, etc., Appellant, etc., *v.* THE MANHATTAN RAILWAY COMPANY, Respondent.

The boarding or alighting from a moving train is presumably and generally a negligent act *per se.*

In order to rebut this presumption, and justify a recovery, in case an injury results, it must appear that the passenger was by the act of the railroad

Statement of case.

company put to an election between alternate dangers; or that something was done or said, or some direction given to the passenger by those in charge of the train; or some situation created which interfered, to some extent, with his free agency, and was calculated to divert his attention from the danger.

It is not sufficient to rebut the presumption of negligence that the trainmen acquiesced in the action of the passenger, or that the company violated its duty or contract in not stopping the train at a station.

In an action to recover damages for alleged negligence causing the death of S., plaintiff's intestate, plaintiff's evidence was to this effect. A train on defendants' elevated road, after stopping in accordance with the usual custom at a station, had started again when S., and two others preceding him, attempted to get on to the rear platform of the first car. The conductor had given the signal to start, and had closed, or attempted to close, the gate to the platform before the first of the three men reached the car. The train was slowly moving, but with a constantly accelerated speed. The two men in advance succeeded in, getting on to the train safely; the conductor having opened, or they having pushed open, the gate. S., who was a short distance behind, attempting to get on board, took hold of the stanchions of the car with both hands, and placed one foot upon the car platform, when the conductor closed the gate. S. was carried along a few feet until he came in contact with a water-pipe, receiving injuries of which he died. The accident occurred in the evening; the station platform was lighted. S. had been in the habit of taking the train in the evening at this station for more than a year. The train was accustomed to stop "very sharp," and to start "very quick." Trains ran every five minutes. *Held*, that plaintiff was properly nonsuited.

*McIntyre* v. *N. Y. C. R. R. Co.* (37 N. Y. 287), *Filer* v. *N. Y. C. R. R. Co.* (49 id. 47), distinguished.

(Argued October 7, 1886; decided November 23, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 14, 1885, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

This action was brought to recover damages for alleged negligence causing the death of Joseph Solomon, plaintiff's intestate.

The material facts are stated in the opinion.

*Geo. Putnam Smith* for appellant. The court erred in dismissing the complaint on the ground of the negligence of plaintiff's

intestate. (*Eppendorf* v. *B., C. & U. R. R. Co.*, 69 N. Y.
195; *Doss* v. *M., K. & T. R. R. Co.*, 59 Mo. 37; *Swigert* v.
*Han. & St. Jo R. R. Co.*, 75 id. 475; *Price* v. *St. L., K. & N.
R. R. Co.*, 72 id. 414; *Filer* v. *N. Y. Cent. R. R. Co.*, 49 N.
Y. 47; *Brooks* v. *N. Y. & Lake E. R. R. Co.*, 21 Week. Dig.
464; *Nelson* v. *A. & P. R. R. Co.*, 68 Mo. 595.) He was not
guilty of negligence in stepping on the moving car unless he
knew, or was bound in law to know, that it was in motion.
(*Evans* v. *City of Utica*, 69 N. Y. 166.) The acts of other
passengers at the time were properly shown to disprove negli-
gence. (*Twomley* v. *C. P., N. & E. R. R. Co.*, 56 N. Y.
158; *Coulter* v. *A. M. Merchants' Co.*, id. 585; *Price* v. *St.
L., K. & N. R. R. Co.*, 72 Mo. 414; *Brooks* v. *Boston & Me.
R. R. Co.*, 135 Mass. 21.) He was not guilty of negligence
in failing to guard against a danger which, under the circum-
stances, he had no reason to expect. (*Lanagan* v. *St. L., etc.,
R. R. Co.*, 72 Mo. 392; *Fowler* v. *B. & O. R. R. Co.*, 18
W. Va. 580.) By its own misconduct defendant placed the
deceased in peril, and it cannot complain if he erred in judgment.
(*Voak* v. *N. C. R. R. Co.*, 75 N. Y. 320; *Cuyler* v. *Decker*,
20 Hun, 117.) Notwithstanding any negligence on the part of
plaintiff's intestate, if defendant, by the exercise of reasonable
care or skill, could have done any thing after it saw him in his
perilous position, whereby the chance of injury might have
been averted, it is liable. (*Austin* v. *N. J. Steamboat Co.*, 43
N. Y. 76; *Swigert* v. *Han. & St. Jo R. R. Co.*, 75 Mo. 475;
*Isbell* v. *N. Y. & N. H. R. R. Co.*, 27 Conn. 406; *Price* v.
*St. L., K. & N. R. R. Co.*, 72 Mo. 414; *Meeks* v. *S. P. R.
R. Co.*, 56 Cal. 513; *Jamison* v. *San Jose R. R. Co.*, 55 id.
593; *Wilmot* v. *Howard*, 39 Vt. 458; *Stebbins* v. *R. R. Co.*,
54 id. 464; *Haley* v. *Earle*, 30 N. Y. 208; *Savage* v. *Corn
Ex. Ins. Co.*, 36 id. 655.)

*Edward S. Rapallo* for respondent. The general rule is
that the boarding or alighting from a moving train is presum-
ably and generally a negligent act *per se*. (*Burrows* v. *Erie
R. Co.*, 53 N. Y. 556; *Morrison* v. *Erie R. Co.*, 56 id. 302,

307; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 47, 51, 52, 53; *Nichols* v. *Sixth Ave. R. R. Co.*, 38 id. 131; *Solomon* v. *Manhattan R. Co.*, 31 Hun, 5; *Gavett* v. *Manchester, etc., R. R. Co.*, 16 Gray, 507; *Hickey* v. *B. & S. Co.*, 14 Allen [Mass.], 429; *Harver* v. *Eastern R. R. Co.*, 116 Mass. 269; *Harper* v. *Erie R. Co.*, 32 N. J. L. 88; *Secer* v. *Toledo, etc., R. Co.*, 10 Fed. Rep'r, 15 [Ill. Circuit Ct., 1882].)

ANDREWS, J.  It is undisputed that the train was in motion at the time the plaintiff's intestate attempted to enter it.  It had been brought to a stop, according to the usual custom, on reaching the Chatham Square station, for the purpose of discharging and receiving passengers, and had started again before the deceased and the two men in front of him, hurrying from the Third avenue train across the bridge and down the steps to the station platform of the Second avenue road, had reached the rear of the first car.  It is also undisputed that the conductor, who was standing on the platform between the first and second cars, had given the signal to start the train and had closed, or attempted to close the gate before the first of the three men reached the car.  The train at this time, as we have said, had started and was slowly moving, but with a constantly accelerated speed.  The two men in advance of the intestate succeeded in safely boarding the train.  The intestate was a few feet behind them.  He attempted to get on to the platform of the car after the others.  The evidence tends to show that he took hold of the stanchions of the car with both hands and placed one foot upon the car platform, and was in the act of passing on to the car when the conductor closed the gate against the deceased, who, clinging to the car, or possibly being caught in some way by the gate, was carried along a few feet, until his body came in contact with a water-pipe extending horizontally at the end of the station platform, and he received the injuries of which he subsequently died.  There is a conflict of evidence as to whether the gate had been fully closed before the two men in front of the intestate reached the car.  The conductor testified that it was closed at that time and was

pushed open by them. Witnesses for the plaintiff testified that the conductor was closing the gate as the two men approached the car, and opened it for them to enter, and then closed it as the intestate was attempting to get on. There is also some discrepancy in the evidence as to the distance from the car platform to the water-pipe at the end of the station platform, when the intestate reached the car. One of the plaintiff's witnesses, who saw the whole transaction, testified that the distance was four or five feet, and other witnesses testified that it was ten feet. Wilson, a witness for the plaintiff, testified: " Although my glance was momentary, I saw him (deceased) constantly from the time he put his foot on the car until he struck the projection; in my best judgment that may have been five feet, but I think it was about four feet, the distance." Haller, also a witness for the plaintiff, was asked: " The whole occurrence, from the time the conductor pulled the bell to start the car until Mr. Solomon struck against the projection and fell, occupied but a very short space of time, did it not?" He answered: " A very little time; quicker than I can tell you."

We are of opinion that the nonsuit was properly directed.

In view of the undisputed fact that the car was moving when the deceased attempted to enter it, it is evident that the obstruction against which the deceased was carried was perilously near, and that a collision was inevitable if the deceased should fail to get on to the car and should be carried along a few feet in the position in which he was when the gate was closed. The station platform was lighted and " every thing was clear." The deceased had been accustomed to take the train in the evening at this station for more than a year. His son, who usually accompanied his father, testified that " the train stops very sharp and goes off very quick." The trains ran every five minutes. There can be no doubt that the deceased was familiar with the surroundings and was acquainted with the manner of operating the trains. It must be assumed that the deceased, when he attempted to enter the car, knew that it was in motion. We cannot know what was passing in his mind, or of what

existing facts he was actually cognizant, except by inference. But what others saw and knew in respect to matters equally open to his observation must be presumed to have been seen and known by him; especially is this presumption a reasonable one in respect to matters which common prudence required him to know and observe before he attempted to enter the car. Knowing then, as must be inferred, that the train was in motion, he took the risk of the attempt to board it. The movement of the train was itself notice to him that the time 'for receiving passengers had passed. He undoubtedly thought he could board the train in safety, and except for the act of the conductor in closing the gate the attempt would probably have been successful. It does not appear that the deceased knew of the attempt of the conductor to close the gate before the two men who preceded him entered the car. But he was in a position to have seen it, and the act was observed by the other witnesses. We are of the opinion that the attempt of the deceased to enter the train under the circumstances disclosed was, in law, a negligent act, which contributed to his death. It is, we think, the general rule of law, established by the decisions in this and other States, as claimed by the learned counsel for the respondent, that the boarding or alighting from a moving train is presumably and generally a negligent act *per se*, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety. *McIntyre's Case* (37 N. Y. 287), and *Filer's Case* (49 id. 47), were cases of injury sustained by passengers, in the one case by going from one car to another by direction of one of the trainmen to get a seat, while the train was in motion, and in the other by leaving a moving car at a station by direc-

tion of the brakeman, who directed the plaintiff, a woman, to get off, saying that the train would not stop. In *Burrows* v. *Erie R. Co.* (63 N. Y. 556), the court reversed a judgment recovered for an injury to a passenger in alighting at his station from a moving car, and in *Morrison* v. *Erie R. Co.* (56 N. Y. 302), the court reversed a verdict for the plaintiff under very similar circumstances. It is said by RAPALLO, J., in *Burrows* v. *Erie R. Co.*, that "the cases in which a recovery has been allowed, notwithstanding that the passenger undertook to leave the car while in motion, are exceptional, and depend upon peculiar circumstances." In short, as we now understand the rule established by the decisions, it is presumptively a negligent act for a passenger to attempt to alight from a moving train, and it is not sufficient to rebut the presumption that the trainmen acquiesced in the action of the passenger, or that the company violated its duty or contract in not stopping the train, or that to remain on the train would subject the passenger to trouble or inconvenience, but that to excuse such an act and free the plaintiff from the charge of contributory negligence, there must be a coercion of circumstances which did not leave the passenger in the free and untrammeled possession of his faculties and judgment.

Negligence no doubt is usually a question of fact of which the jury must inquire, but the inference of negligence in a given case may be so clear and convincing that the judge may direct a verdict. The conclusion that it is *prima facie* dangerous to alight from a moving train is founded on our general knowledge and common experience, and it is akin to the conclusion, now generally accepted, that it is in law a dangerous, and, therefore, a negligent act, unless explained and justified by special circumstances, to attempt to cross a railroad track without looking for approaching trains. In boarding a moving train there is generally less excuse than in alighting from one. The party attempting it is not often under the same stress of circumstances as frequently happens in the former case. He may be compelled to wait for another train, but this is an inconvenience merely, which does not justify exposing himself to

hazard. In the *Phillips'* Case (49 N. Y. 177) the plaintiff was thrown against a platform in attempting to board a train while in motion, and a nonsuit was sustained in this court. In the present case, the intestate as has been said was familiar with the situation. He must have known that, according to the ordinary rules, the time for receiving passengers had passed, and that the greatest celerity and promptness was required on the part of those intrusted with the management of trains. It is said that the opening of the gate by the conductor was an invitation for him to enter, and that if the conductor had not closed the gate upon him, he would have boarded the train in safety. It is true that the opening of the gate to admit the two men in front of the deceased, and their safe entrance, may have given the intestate confidence that he could enter also. But the act of the conductor, as the sequel shows, was not intended as an invitation to the intestate, and the conductor's misjudgment or negligence was one of the hazards which the intestate ran. It did not relieve him from the imputation of negligence, because he did not foresee the obstruction which would be interposed, or that without the negligence of the conductor the accident would not have happened. One of the very dangers of the situation arose from the fact that all the contingencies upon which the success of the effort to enter the car depended could not be anticipated. If men will take such hazards, they must bear the consequences of their own rashness, and it is no just reason for visiting the consequences upon another, that his negligence co-operated in producing the result.

We think the judgment should be affirmed.

Ruger, Ch. J., Earl and Finch, JJ., concur; Miller and Danforth, JJ., dissent; Rapallo, J., takes no part.

Judgment affirmed.