LAUTERER v. MANHATTAN RY. CO.

(Circuit Court of Appeals, Second Circuit. February 1, 1904.)

No. 76.

1. **WRONGFUL DEATH—ACTION FOR DAMAGES—RELEVANCY OF EVIDENCE.**

Where plaintiff's intestate attempted to board a car on an elevated road at a station after the gate had been closed and the car was moving, and after being carried beyond the station platform fell and was killed, the absence of a railing or guard across the end of the platform cannot be considered a proximate cause of the accident, and evidence as to the construction of the platform was properly excluded, in an action to recover for the death.

2. **RAILROADS—CONSTRUCTION OF STATIONS—NEGLIGENCE.**

A railroad company is bound to exercise only such degree of care in the construction of its stations and platforms as is sufficient to protect passengers using ordinary care from injury.

3. **SAME—INJURY OF PASSENGER—LIABILITY FOR FAILURE TO GUARD AGAINST PASSENGER'S NEGLIGENCE.**

One who voluntarily and unnecessarily exposes himself to a known danger, by attempting to climb on board a moving car, assumes all risks of injury therefrom; and the railroad company is not chargeable with negligence, causing his injury, which results from his falling from the car because of the manner in which its station or platform is constructed.

4. **SAME—STATE REGULATION—CONSTRUCTION OF STATUTE.**

The New York statute (Laws 1890, p. 1126, c. 565, § 138), which provides that no train on an elevated railroad shall be permitted to start from a station until every passenger upon the platform desiring to enter the cars shall have done so, unless due notice has been given that the cars are filled, must be given a reasonable construction, and cannot be held to require gates of cars to be opened after they have been closed and a signal to start given, or after they have actually started, because people may thereafter come onto the platform and desire to take the train, which in many cases of daily occurrence would wholly prevent the operation of trains.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the United States Circuit Court for the Southern District of New York, entered in favor of defendant on a verdict of a jury.

F. E. M. Bullawa, for plaintiff in error.
Henry W. Taft, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Plaintiff, as administrator, brought this action to recover damages suffered by reason of the death of his son, who was fatally injured by being crushed between the station of defendant's railway at 169th street and Third avenue and a southbound train of cars. Beyond the southerly end of the main platform at this station is a ledge 16¾ inches wide, sloping from the side of the station house toward the track. It was not separated from the end of the platform by any rail or guard. Above this ledge the distance between the body of the station house and the body of a car on the southbound track is about 21 inches. The accident happened on the

morning of December 22, 1899, at about 20 minutes past 7, when a southbound train had stopped at the station with the rear gate of its forward car about on a line with the end of the station building, facing the platform, from which point said ledge extends.

In view of the extraordinary claims asserted in support of the assignments of error, it becomes necessary to summarize the testimony as to the circumstances attending the accident.

Miss Wurtz testified that on the morning in question, as she opened the door of the station, her attention was attracted to decedent by seeing him hurrying out, and she stepped aside to let him pass; that he brushed past her, and "when he started to run to catch the car the forward gate of the second car was already closed." She further testified as follows:

"There was not any one on the platform besides myself. * * * The last gate of the first car was open, the first gate of the second car was closed. The car was not in motion. The young man placed his foot on the last platform of the first car. He placed his foot on the car. The car was not in motion."

Joseph G. Frost testified that he was acting as conductor on the morning in question, but that he was no longer in the employ of the Manhattan Railway Company; that he duly stopped at said station. took on all the passengers there, closed both gates, gave the signal, and started the train; that, just as the train started, deceased came rushing out, slammed the door and stood there; that a porter held up his hand, and said, "Too late"; that deceased stood there about a minute to get back his breath, and looked at him; that he (Frost) also said, "Too late," and then, all of a sudden, deceased made a dash around the porter, got hold of the stanchion of the car, and got about one-half of his foot on the step over the edge of the platform of the car; that, as soon as he (Frost) saw this, he quickly opened the gate and tried to pull him in, but, before he could do so, deceased turned around and lost his hold, and went down between the car and the station house. He further testified that the gate was closed and the train in motion before deceased attempted to get on, and that he (Frost) did not try to open the gate until after he saw that deceased had got his foot on the platform and that his life was in danger.

William Becker, an employé of Adams Express Company, testified that deceased came behind him, rushing up the stairs, ran by him, pushed him aside, got a ticket, dropped it in the box, ran right ahead past the first door, and swung open the second door; that he (Becker) stood still; that both gates were closed; that, when the cars had gone about two feet, deceased made a leap for the back end of the first car, and the car went a couple of feet, and he slipped and went down between the two cars; that he saw the conductor grab for the deceased to try to pull him on the platform; and that he thought the conductor opened one of the doors.

There was no other testimony as to the manner in which the accident happened, except that of one witness to the effect that she stepped aside to let deceased buy a ticket, because he seemed to be in a hurry.

We think it doubtful whether it would have been error for the court to take the case from the jury on the ground that the practically undisputed evidence conclusively showed that the accident was the direct result of the negligence of the deceased. Elliott v. Chicago, Milwaukee & St. Paul Ry. Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068, and cases cited.

The testimony of Miss Wurtz, as to the last gate of the first car being open is somewhat indefinite as to time, especially in view of the fact that her attention was diverted part of the time by reason of her turning to let the young man pass and to call to a friend who was with her. But the court gave plaintiff the benefit of the doubt, and submitted the case to the jury, charging them on this branch of the case as follows:

"If the gate of either platform was open at the time the young man attempted to board the car, it was to a certain extent an invitation to him to enter, and, if the car started before the gate was closed, the defendant was guilty of negligence."

Despite this instruction, counsel for plaintiff has assigned as error the refusal of the court to charge that "the defendant was bound to exercise all the care and skill which human prudence and foresight could suggest." So far as concerns plaintiff's claim that the car was negligently started, the court assumed this perfectly well-settled obligation of law as binding upon the defendant, and in effect charged that, no matter how much care and skill might have been exercised by defendant, if it started the car before the gate was closed, it was negligent.

Error is further assigned to the refusal of the court to receive any evidence concerning the construction of the platform. The theory of counsel for plaintiff on this point seems to be that the court should have admitted evidence as to the absence of a guard or railing shutting off the space beyond the platform, and should have charged the jury that the absence of such railing was negligence. This position is manifestly untenable. It is not the province of a court or jury to reconstruct the defendant's stations upon such theoretical suggestions. If such railing had been provided, and a person had been killed or injured by striking against it, we think it might have been quite as plausibly argued by counsel that the presence of said railing was the cause of the accident, and that, if the space had been left open, such person might have escaped serious injury, by being permitted to fall on the platform ledge, instead of being thrown against the obstruction.

But the vital objection to the evidence offered is that it appears beyond question that the construction of the platform was not the proximate cause of the injury. In support of his contention that the absence of said railing was the proximate cause of the accident, counsel for plaintiff has cited various cases decided in the courts of this state, and especially relies on Ellis v. New York, Lake Erie & Western Railroad Co., 95 N. Y. 546, and Lilly v. New York Central & Hudson River Railroad Co., 107 N. Y. 566, 14 N. E. 503. But in the Ellis Case it was held that the immediate effect of the negligent failure of the railroad company to provide buffers on its car "was to put the

car in such condition that, in case of collision at the rear, its body must be impelled against the preceding car with a force to which it could offer no resistance, and therefore its absence was the 'causa causans,' * * * the proximate cause of injury." In Lilly v. New York Central & Hudson River Railroad Co., supra, a divided court, "after considerable reflection" and "with some hesitation," in a "border" case, held that, where plaintiff was knocked off a car through the negligence of servants, the question whether "the failure to have the brakes in good condition does bear such a relation to the happening of the accident as to make it a question of fact for the jury to determine, upon all the evidence in the case, whether the injury would have occurred if the brakes had been in good order and properly set." In each of these cases the defendant sought to escape liability for negligent failure to provide proper appliances or a safe place, by invoking the protection of the fellow servant rule, and the court refused to allow exemption on that ground.

But we are not here concerned with the decisions of the courts of this state on the question of proximate cause, but with the rule in the federal courts. As was said by the New York Court of Appeals in discussing this doctrine in Condict v. Grand Trunk Railway Co., 54 N. Y. 500:

"The rule adopted in Massachusetts and Pennsylvania was also applied in Railroad Company v. Reeves, 10 Wall. 176 [19 L. Ed. 909]. Those decisions are in direct conflict with the law as settled in this state, and cannot control the decision of this case."

If counsel for plaintiff had wished to avail himself of a rule such as he claims is established in the New York courts, he was at liberty to bring this action there, instead of resorting to the federal courts.

Counsel for plaintiff pressed upon our attention in the argument of this exception the case of Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. There the court says:

"Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years (having been first enunciated in Davies v. Mann, 10 M. & W. 546), that the contributory negligence of the party injured will not defeat the action, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence."

And, subject to said qualification as to reasonable care and prudence, the court approved the following charge:

"Turning, now, to the conduct of Smith, and subjecting that to the same test of reasonable prudence and cautious conduct of a person in his situation, you will understand that, no matter how negligently the company ran this train, or how unreasonably they neglected to provide sufficient safeguards at the crossing, if he brought his death upon himself by his own negligence, his administrator is not entitled to a verdict in this suit."

In the case at bar it cannot be claimed that any negligence of defendant was the primary cause of the injury, because the jury have found as a fact that deceased attempted to board a moving train after the gate had been closed. He is thus brought within the uni-

versal rule that a person who seeks to recover for a personal injury sustained by another's negligence must not himself be guilty of negligence that substantially contributed to the result. "Where the plaintiff himself so far contributed to the misfortune, by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened, he cannot recover." Railroad Company v. Jones, 95 U. S. 439, 24 L. Ed. 506.

But, even if it be assumed that the result of plaintiff's negligence might have been different, if the defendant had provided a railing, yet the failure to provide such railing does not show the failure to exercise reasonable care and prudence. The defendant is not required to provide against accidents resulting either from the reckless disregard by passengers of its reasonable rules, or through their negligent heedlessness of their personal safety. It is only bound to exercise such a degree of care and prudence as is sufficient to protect the ordinary passenger using ordinary care on his part. Here deceased, having voluntarily and unnecessarily exposed himself to a known danger, must be held to have assumed all risks of injury which a careful and prudent person would apprehend as likely to flow therefrom. Motey v. Pickle Marble & Granite Co., 74 Fed. 155, 20 C. C. A. 366; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; McDonald v. Snelling, 14 Allen, 290, 92 Am. Dec. 768; Chicago, St. Paul, M. & O. Ry. Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582.

When the negligence of the injured plaintiff is the efficient cause of the accident, defendant is not liable in negligence for any act or omission, where no injurious consequence could reasonably have been contemplated as a result of such omission or act. Scheffer v. Railroad Co., supra; Railroad Co. v. Reeves, supra; Gould v. Slater Woolen Co., 147 Mass. 315, 17 N. E. 531; Lilly v. New York Central & Hudson River Railroad Co., 107 N. Y. 575, 14 N. E. 503. Furthermore, a defendant is not liable, even where it is negligent, provided such negligence is not the proximate cause, but merely a remote cause or condition of the accident. Railroad Company v. Reeves, supra. "But where, upon all the evidence, the court is able to see that the resulting injury was not probable, but remote, the plaintiff fails to make out his case, and the court should so rule, the same as in cases where there is no sufficient proof of negligence. McDonald v. Snelling, 14 Allen, 290, 299 [92 Am. Dec. 768]. In Hobbs v. London & Southwestern Railway, L. R. 10 Q. B. 111, 122, Blackburn, J., said: 'I do not think that the question of remoteness ought ever to be left to a jury. That would be in effect to say that there shall be no such rule as to damages being too remote.' It is common practice to withdraw cases from the jury, on the ground that the damages are too remote." Stone v. Boston & Albany Railroad, 171 Mass. 543, 51 N. E. 4, 41 L. R. A. 794, and cases cited.

Where the question of proximate cause is in doubt, it should be submitted, under appropriate instructions, to the jury; but, where it is not a matter of doubt, it is a question of law for the court. Elliott

v. Chicago, Milwaukee & St. Paul Ry. Co., supra; Southern Pacific Company v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485. In the case at bar there was no question of fact for the jury because, in view of the law already stated, the accident was merely a condition of the proximate cause, and is not one which might reasonably have been foreseen. As Mr. Pollock on Torts says, in discussing proximate cause:

"It follows that if, in a particular case, the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability."

See Scheffer v. Railroad Company, supra; Milwaukee & St. Paul Ry. Co., v. Kellogg, supra.

In the latter case the Supreme Court says as follows:

"In order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

It follows that, if the court had submitted to the jury the question as to whether defendant was negligent in failing to provide a railing at the end of the platform and they had found thereon in favor of plaintiff, it would have been the duty of the court to set it aside.

Error is further assigned to the refusal of the court to charge as follows:

"If deceased had deposited his ticket and was on the platform before the train had started, it was the duty of the conductor to have held the train until plaintiff's intestate had opportunity to board the train."

This assignment of error is founded upon the provision of section 138 of the railroad law of the state of New York (chapter 565, p. 1126, Laws 1890), and section 419 of the New York Penal Code.

Section 138 provides as follows:

"All trains upon elevated railroads shall come to a full stop before any passenger shall be permitted to leave such trains; and no train on such railroad shall be permitted to start * * * until every passenger upon the platform or station at which such train has stopped, and desiring to board or enter such cars, shall have actually boarded or entered the same, but no person shall be permitted to enter or board any train after due notice from an authorized employee of such corporation that such train is full and that no more passengers can be then received."

Section 419 imposes a penalty upon—

"Any conductor, brakeman or other agent or employee of an elevated railroad, who:

"(1) Starts any train or car of such railroad, or gives any signal or order to any engineer or other person to start such train or car, * * * before every passenger on the platform or station at which the train has stopped, who manifests a desire to enter the train has actually boarded or entered the same, unless due notice is given by an authorized employee of such railroad that the train is full, and that no more passengers can then be received."

And section 139 of said railroad law provides as follows:

"Every car used for passengers upon elevated railroads shall have gates at the outer edges of its platforms, * * * and every such gate shall be kept closed while the car is in motion; and when the car has stopped and a

gate has been opened, the car shall not start until such gate is again firmly closed."

· Counsel for plaintiff asserts in his brief that:

"The deceased was entitled to act upon the belief that the defendant's conductor would open the gate of the car and give him an opportunity to board before permitting the car to start, since he was upon the platform manifesting a desire to enter before the car had actually started."

The court was not bound to charge said request. There was testimony tending to show that, after the gate was closed, deceased rushed out on the platform, and that, when the porter and conductor said, "Too late," he stood still until after the train had started. If the jury believed this evidence, deceased did not "manifest a desire · to enter the train" until after it had started.

Furthermore, this court must take judicial notice, from daily experience, of the practical operation of the trains of the elevated railway. If the foregoing provisions are to be interpreted to mean that no train can start until every passenger on the platform, desiring to enter such cars, shall have entered the same, the elevated railway could not run. We all know that in the rush hours of the day there is a continual line of prospective passengers on the platform, signifying, with various degrees of energetic insistence, their desire to enter such cars. If such passengers are "entitled to act on the belief that the conductor will open the gate" after it has been closed, and the conductor should thus act, the railroad would be involved in a dilemma between stopping the car until such gate could be again firmly closed, or inviting intending passengers to assume a dangerous position at the moment when the car was starting. We do not understand that any such impracticable construction has ever been put upon the railway law of this state, and we certainly should not feel disposed thus to interpret it or apply it to the facts found herein.

There is no merit in any of the assignments of error. The judgment is affirmed.