CARRIERS—INJURIES TO A PASSENGER—SUDDEN MOVEMENT OF TRAIN.

Where a passenger alighted from a train while it was standing at a water tank and subsequently boarded it while it was moving, and just after he boarded it, and while he was standing on the steps of a car, he was thrown therefrom by a sudden jolt of the train, there was no negligence authorizing a recovery for his injuries.

[Ed Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1205.]

Appeal from Trial Term, Onondaga County.

Action by Alonzo R. Winchell against the New York Central & Hudson River Railroad Company. Appeal by defendant from a judgment in favor of plaintiff and from an order denying a motion for a new trial. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and KRUSE, JJ.

A. H. Cowie, for appellant.
Frank C. Sargent, for respondent.

KRUSE, J.    The plaintiff's right leg was crushed by the wheels of a railroad car passing over it, resulting in the loss of the limb.    He was a passenger at the time on the defendant's train.    He was on his way from Syracuse, his home, to some point in the Adirondacks.    Before reaching his destination he had alighted at a small station, where the train had stopped to take water.    He got off to get something to eat.    The train started.    He attempted to get on the train while it was moving, and fell or was thrown therefrom by a sudden and unusual jerk or jolt of the train; the wheel of the car passing over his leg, as has been stated.    The accident occurred on the 10th day of August, 1903, and the place where the train stopped is called "Horseshoe Pond."    It was the usual meeting place of this north-bound train and a south-bound train.    The trains did not always stop at the station.    The station is on the west side of the track about 200 feet north of the water plug, where the engine was taking water; the water plug being on the east side of the track.    The water plug is on the same side as the hotel where the plaintiff went to get a sandwich.    The hotel is 310 feet north of the water plug, and about 100 feet farther north than the station.

The plaintiff, seeing the engine taking water, inquired of a man, whom he describes as wearing a blue uniform, and wearing a hat on which were the letters "N. Y. C.," if he would have time to get a sandwich.    The man replied, "Yes," that they had got to take water there and then would come down to the station and stop.    The plaintiff thereupon got off, went to the hotel, or boarding house, as it is also called, and got a sandwich.    When he came out of the hotel the engine had started, and was coming toward him slowly.    The plaintiff went toward the train, keeping on the east side of the track.    What occurred thereafter may be best stated in his own words:

"When I got within about eight feet of the step, the forward step of the smoker, I put the sandwich in my teeth. I took hold with my hands, like that, hold of the two rails, with the sandwich in my teeth, and stepped on with the right foot first and then with the other one. I stood on the lower step. I stood there for three or four seconds resting myself. During that time the train had advanced ahead 20 or 25 feet. That train then gave a sudden lurch, jerked my hands loose, and it flung me around backwards, like that, under the train, and cut my leg off. When the train gave a sudden lurch forward I had hold with both hands. I had my hands holding the rails like that (indicating). I have got quite a grip in my hands too. I have a good grip in my hands. I was holding on fast. When it jerked that time it was a sudden jerk, like that, and I went the other way. I mean a sudden jerk forward. I went one way, and the train the other."

The plaintiff testified that in his opinion the train was going at the rate of from two to three miles an hour when he stepped on the lower step; but witnesses called on behalf of the defendant put the speed of the train much faster—some of them as high as 10 miles an hour at the point where the plaintiff attempted to board the train. A motion for a nonsuit was made on behalf of the defendant at the close of the plaintiff's case, upon the ground that no negligence was shown against the defendant, and upon the further ground that the plaintiff was guilty of contributory negligence, which was denied, and the defendant excepted. A like motion was made at the close of all the evidence, which was also denied, and an exception taken by the defendant. The jury were not required to render a general verdict. Specific questions were submitted to them, by which they found the defendant negligent, and the plaintiff free from contributory negligence, and fixing the damages at $10,000. Upon the special verdict, the trial court directed a general verdict in favor of the plaintiff against the defendant for $10,000.

In submitting the question of the defendant's negligence, the learned trial court, after stating generally that a railroad corporation operating cars is bound to use reasonable care so that its passengers may be protected from danger, very clearly and specifically pointed out that whether the defendant, under the circumstances of this case, was negligent, depended upon "whether this car was jolted forward in an unusual, in a violent, in an extraordinary manner"; that whether the particular jolt constituted negligence depended largely upon its violence, and the place where the train was, and the knowledge which the engineer had, or did not have, as to whether a jolt was likely to occasion harm or not, upon all the circumstances surrounding the transaction.

We are of the opinion that, in no view of the evidence, is there any liability established against the defendant for the jolt of the train which caused the injuries received by the plaintiff upon this occasion. The train crew consisted of the engineer, conductor, and two trainmen; one a brakeman and one a baggageman. They were all sworn at the trial, except the brakeman, who was ill and not present at the trial. Each testified that he did not tell the plaintiff that he would have time to get a sandwich, and that the train would stop at the station. The plaintiff did not identify any of these three trainmen as the one who had given him the information. Assuming, however, that the brakeman or some other employé did so inform the plaintiff, and that it was

within the scope of his employment to impart the information, I do not think the circumstance deserves the importance which is claimed for it on behalf of the plaintiff. Taking the view most favorable to the plaintiff, he must have known at the time that he attempted to board the train that it was not going to stop. If he believed that the train was only pulling up to the station, and would then stop, he had less reason to get on the train while it was moving, and was the more culpable in attempting to do so. There is no evidence that the engineer knew, or had any reason to believe, that the plaintiff, or any one else, would attempt to board this moving train. There were no passengers to be let off, and none to be taken on at this point, so far as the evidence discloses. The case is entirely destitute of any evidence showing that the engineer, conductor, or any one of the train employés had any reason to believe that the plaintiff would attempt to board the moving train, or saw him attempt to do so, or knew that he was in a place of insecurity or danger upon the step of the platform, and liable to be thrown off by this sudden jolt of the train.

This case is unlike Distler v. Long Island R. R. Co., 151 N. Y. 424, 45 N. E. 937, 35 L. R. A. 762, relied upon by the plaintiff. In the Distler Case it appeared that, while the train was passing slowly along the station platform at the rate of two or three miles an hour, the conductor bade the plaintiff to get on. The plaintiff was standing on the station platform, and, complying with the direction of the conductor, stepped on the steps leading to the forward platform of the second car, passing on until one foot was upon the platform and the other upon the step below, when the train started with a sudden jerk or lurch, throwing him from the car and seriously injuring him. In the case at bar there was no such invitation. The mere fact that the plaintiff had been informed that the train was going to stop at the station was no assurance that it would be safe for him to board the train as he attempted to do.

As was said in Jones v. New York Central & H. R. R. Co., 156 N. Y. 187, 50 N. E. 856, 41 L. R. A. 490, where the inquiry was what duty the railroad company owed to the traveling public, in preventing a car from being jolted at a particular time and place where the plaintiff boarded it:

"No special duty was owed to this plaintiff, for she was not personally invited to get on the car at this point by any of the defendant's officers or employés. It does not appear that the engineer, or any person in control of the train, knew that she was attempting to get on, and these facts justify the assertion made that the defendant owed no special duty to the plaintiff."

So, in this case, we fail to see how the engineer, or any one in control of this train, is chargeable with knowledge that the plaintiff, or any other passenger, would be upon the step of the platform in the position in which the plaintiff was when he fell, and liable to be thrown off by the movement of the train.

The trial court charged the jury as a matter of law that boarding a train running at a speed of four miles an hour and more is in itself negligence, but permitted the jury to find the plaintiff free from negligence in attempting to board the train, if it was going at the rate of two or three miles an hour, leaving that question to be determined by

the jury as a matter of fact upon all the circumstances appearing in the case. The trial court further charged the jury, as requested by the defendant's counsel, that the plaintiff was not entitled to recover for the injury received by him, he having boarded a moving train, unless he was by the act of the defendant put to the election of alternative dangers, or that something was done or said, or that some direction was given to him by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger and create a confidence that the attempt could be made in safety. While this was a correct statement of the rule laid down in Solomon v. Manhattan Railway Co., 103 N. Y. 437, 9 N. E. 430, 57 Am. Rep. 760 we think the circumstances of this case do not bring it within the exception to the general rule that a person is presumably negligent in boarding a moving train. It seems to us quite clear that the plaintiff saw that he was about to be left, and, rather than suffer the inconvenience of having to wait over, he voluntarily took his chances in boarding this moving train.

It is, however, contended, on the part of the plaintiff, that his negligence, if any, in getting upon the moving train, did not contribute to his injury; that the danger of getting on the train had passed; and that he would have been safe but for the jolt and jerking of the train, as was held in the Distler Case. I think it may well be doubted that the facts of this case warrant the application of the rule applied in the Distler Case. I am not persuaded that the mere fact that the plaintiff had succeeded in placing his feet upon the lower step, and had stopped a few seconds to rest, and was thrown off by the sudden jolt before accomplishing his purpose of getting upon the platform, so changed the situation, as regards his negligence in attempting to board the train, that it can be said in any legal sense not to have contributed to his fall, and the consequent injury received by him. It seems to me that the facts of this case come rather within that of Rider v. Syracuse R. T. Ry. Co., 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125, where the Court of Appeals refused to apply the rule. However, it is unnecessary to decide that question. Even if the plaintiff was not negligent in boarding the train, or if this want of prudence or lack of care on his part was not a contributing cause of his injuries, we are nevertheless of the opinion that the defendant is not liable for the injuries which the plaintiff received arising out of the jolt of this train. We place our decision upon the broad ground that, under the circumstances of this case, the sudden movement of this train forward does not constitute actionable negligence and subject the defendant to liability for injuries sustained by the plaintiff in falling or being thrown from the step and run over by the moving car.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.