## PALEN v. WHEELOCK et al.

(Circuit Court of Appeals, Eighth Circuit. May 24, 1926.)

No. 7150.

**1. Carriers ⊚⟞318(8).**

Evidence *held* insufficient to show that railroad employees were guilty of negligence in closing platform or door over steps before passenger had reasonable time and opportunity to board train.

**2. Carriers ⊚⟞287(1).**

Trainmen have duty to close vestibule doors immediately on train leaving station.

**3. Carriers ⊚⟞318(8).**

Evidence *held* to fail to show actionable negligence on part of railroad employee in closing vestibule door moving on train, resulting in passenger being pushed from steps and injured as he attempted to board it.

**4. Carriers ⊚⟞328(3).**

Passenger attempting to board moving train after trap door had been lowered, *held* guilty of contributory negligence.

**5. Carriers ⊚⟞328(3).**

Undertaking to board train in motion with trap door closed down over steps is negligent act per se, in absence of circumstances excusing act.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Hugh Palen against William W. Wheelock and another, receivers of the Chicago & Alton Railroad Company. Judgment for defendants, and plaintiff brings error. Affirmed.

W. H. Douglass, of St. Louis, Mo. (Douglass, Inman & Horsefield, of St. Louis, Mo., on the brief), for plaintiff in error.

Edward C. Crow, of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., on the brief), for defendants in error.

Before SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. Hugh Palen (hereinafter called plaintiff) brought this action against the receivers of the Chicago & Alton Railroad Company (hereinafter called defendants), to recover damages for personal injuries.

Plaintiff was injured while attempting to board the train of the defendants while it was departing from the station at Alton, Ill., on November 26, 1923. At the time of his injury, plaintiff was a man 47 years of age and was employed as a railroad section hand. On the day of the accident plaintiff desired to travel on defendants' train No. 2 from Alton to Godfrey, Ill., and for that purpose went to defendants' station at Alton. When he reached the station, train No. 2 had already arrived, and was standing at the station. Plaintiff started to get onto the train without a ticket, but, seeing the conductor at the station door, was of the opinion that he would have time to purchase a ticket and went to the ticket window and purchased a ticket for Godfrey. While plaintiff was waiting for his change, the conductor left the station and started toward the train. Upon receiving his change, plaintiff went out for the purpose of boarding the train.

The train consisted of eight cars, arranged in the following order, from front to rear: Mail car, combination baggage and smoking car, two chair cars, a dining car and three parlor cars. When the train arrived at the station, the vestibule doors at the rear end of the combination car and the front end of the first chair car were opened, and a train porter was there present to assist passengers on and off the train. The head end of the second chair car was also opened, and Steiner, a flagman and brakeman, was stationed there. When the conductor came out of the depot, he looked to see if the train work had been completed, and if the platform was clear. Steiner, the brakeman, signaled the conductor that everything was clear at the rear of the train, and the conductor gave the signal to the engineer to proceed out of the station. The conductor then boarded the train at the opening of the combination car.

Plaintiff testified that he followed shortly behind the conductor; that the train started forward about the time the conductor boarded the train; that when plaintiff reached the train it had proceeded forward about a half a car length and was traveling three or four miles an hour; that he took hold of the hand rails, put his left foot on the step and had his right foot on the platform, and that the conductor closed the outside door of the vestibule (the door proper as distinguished from the trap door that closed down over the steps) against him and pushed him off the train; that he fell alongside the train, and that the wheels ran over his left leg five or six inches below the knee, causing the injuries for which he seeks recovery.

Plaintiff also testified that he undertook to enter the train at the front end of the second day coach, which would be the chair car at which Steiner, the brakeman, was stationed.

The undisputed evidence showed that when the vestibule doors are opened to permit passengers to leave and board the train, the outside door is first opened; that it swings back against the front end of the coach proper; that the trap door is then raised up outside of and against the vestibule door; and that because of the foregoing it is impossible to close the vestibule door without first lowering the trap door.

Steiner testified that just before the train started, the conductor was near the entrance to the combination car; that he signaled the conductor that everything was all right at the rear of the train, and that the conductor then signaled the engineer to proceed out of the station. Steiner testified, that thereupon he boarded the train and lowered the trap door and started to close the vestibule door, when he saw a man's hand take hold of the handle just outside the vestibule opening; that he opened the vestibule door and raised up the trap door; that the man fell down; and that he did not see the man until after the trap door was closed and he was in the act of closing the vestibule door.

The plaintiff testified positively that it was the vestibule door and not the trap door that struck him. He testified further that just as he put his foot on the step and took hold of the hand rails, the door was coming shut.

Samuels, an assistant baggageman, who was on the platform at the time of the accident, testified that the trap door was down when plaintiff took hold of the hand rails and attempted to board the train, and that the motion of the train threw him around against the trap door, and that he fell down alongside of the train.

McKee, the baggageman, testified that he saw Steiner signal the conductor, the conductor signal the engineer, the conductor board the train at the opening of the combination car, and Steiner board the train at the front end of the second chair car; that as the train moved away from the depot it was traveling around a curve and that he was on the inside of the curve; that he saw plaintiff come out of the station and run toward the train and attempt to board it at the front end of the second chair car, the entrance where Steiner boarded the train; that the train had traveled two car lengths and had attained a speed of about eight miles an hour when plaintiff undertook to board the train; and that when he saw plaintiff fall, he pulled the emergency valve and stopped the train.

Hart, a witness for plaintiff, estimated the speed of the train at about three miles an hour, and stated that it had traveled 50 or 60 feet when the accident occurred.

The train arrived and departed from the station on schedule time. It remained at the station three minutes, giving full opportunity for passengers to board the train in safety.

In his petition plaintiff set up two grounds of negligence: (1) That defendants' employees "closed the platform or door over the steps before the plaintiff had reasonable time and opportunity in which to board said train"; and (2) "that one of defendants' employees in performing his duties negligently closed the door or platform to the steps when he saw, and by the exercise of ordinary care could have seen, plaintiff in the act of boarding said train by way of the steps."

At the close of all the evidence, the defendants moved for a directed verdict in their favor and the trial court sustained the motion. Judgment was entered for the defendants, and the plaintiff sued out a writ of error therefrom to this court.

[1] The first ground of negligence assigned is wholly without support in the evidence. The undisputed evidence shows that the train arrived and departed from the station on schedule time, that it remained at the station three minutes, and that while it there remained, the vestibule doors were opened and trainmen were stationed at the entrances to the coaches for the purpose of assisting passengers on and off of the train, and full opportunity was afforded passengers to board the train in safety.

[2, 3] It is apparent from the undisputed evidence that plaintiff undertook to board the train while it was in motion proceeding out of the station. One of the purposes of a vestibule at the end of a coach is to afford safety to the passengers and employees while the train is in motion. To perform such function, the vestibule doors must be closed. It was the duty of the trainmen to close the vestibule doors immediately upon the train leaving the station. Helm v. Hines, 109 Kan. 48, 196 P. 426, 428, 198 P. 190. Steiner testified that he did not see the plaintiff until he had closed the trap door and partially closed the vestibule door. This testimony is not denied. It is supported by the physical facts. The plaintiff and the train were both in motion immediately before the plaintiff undertook to board the train. Therefore, plaintiff must have approached the open vestibule at an angle. Steiner could not have seen plaintiff until the latter was

close to the vestibule opening. It was not incumbent upon Steiner, after full opportunity had been afforded passengers to board the train. and after he had looked to see if there were any other passengers on the platform before he went aboard, to lean forward out of the vestibule door and again look to see if any person perchance was going to undertake to board the train while it was in motion. It is our opinion that the evidence failed to show any actionable negligence on the part of the employees of the defendants. [4] But, if we may assume that Steiner was negligent in closing the vestibule door, we are at once confronted with the question of contributory negligence on the part of the plaintiff. If the vestibule door struck plaintiff as he testified, then he must have been undertaking to board the train at a time when it was in motion, proceeding out of the station, with the trap door down and the vestibule door about to be closed, because the physical facts conclusively show that the vestibule door could not have been closed until the trap door was down. Plaintiff testified that the vestibule door was coming shut as he put his foot on the step.

[5] Undertaking to board a train while it is in motion, proceeding out of a station with quickly increasing speed, and with the trap door closed down over the steps is a negligent act per se in the absence of circumstances which excuse the act. Norfolk & A. Terminal Co. v. Rotolo (C. C. A. 4) 191 F. 4, 112 C. C. A. 583; Sigl v. Green Bay Traction Co., 149 Wis. 112, 135 N. W. 506, 39 L. R. A. (N. S.) 65; Sheehan v. Nassau Electric R. Co., 143 App. Div. 621, 128 N. Y. S. 545; Lauterer v. Manhattan Ry. Co. (C. C. A. 2) 128 F. 540, 63 C. C. A. 38; Missouri Pac. R. Co. v. Texas & Pac. R. Co., Laboy, Intervener (C. C.) 36 F. 879; Solomon, Adm'x, v. Manhattan Ry. Co., 103 N. Y. 437, 9 N. E. 430, 57 Am. Rep. 760; Murphy v. Pere Marquette R. Co., 183 Mich. 435, 150 N. W. 122, L. R. A. 1915C, 536; Phillips v. Ransselaer & Saratoga R. Co., 49 N. Y. 177; Harvey v. Eastern R. Co., 116 Mass. 269; Browne v. Raleigh & G. R. Co., 108 N. C. 34, 12 S. E. 958; Bacon v. Delaware, L. & W. R. Co., 143 Pa. 14, 21 A. 1002; Denver, S. P. & P. R. Co. v. Pickard, 8 Colo. 163, 6 P. 149.

In Solomon v. Railway Co., supra, the court said:

"It is, we think, the general rule of law, established by the decisions in this and other states, * * * that the boarding or alighting from a moving train is presumably and generally a negligent act per se, and that

in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."

In the instant case, no circumstance excused the plaintiff's action. He failed to exercise that reasonable degree of care which a man of ordinary intelligence and prudence would have used in his situation, and such failure directly contributed to cause his injury. We believe the minds of reasonable men, in the exercise of an impartial judgment, could reach no other conclusion from the evidence in this case. Such being the fact, the trial court properly directed a verdict for the defendants. The judgment is therefore

Affirmed.