## REDFIELD v. NEW YORK CENT. R. CO.
### No. 10398.

Circuit Court of Appeals, Eighth Circuit.
March 4, 1936.

As Modified on Denial of Rehearing
April 17, 1936.
Further Rehearing Denied May 13, 1936.

E. H. Gamble, of Kansas City, Mo. (S. L. Trusty and Edward E. Pugh, both of Kansas City, Mo., on the brief), for appellant.

Albert S. Marley, of Kansas City, Mo. (John S. Marley, of Kansas City, Mo., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

After this court filed its opinion remanding this case, appellee filed a petition for rehearing. We have painstakingly examined the matters urged therein. We have no doubt as to the verity of the result reached in our former opinion. However, a careful scrutiny of our opinion has led us to conclude that a rule of law announced therein was erroneously stated and would probably be troublesome in the retrial of this case and also as a general precedent. This error is so interwoven into several paragraphs in the latter part of the opinion that, for purposes of clarity, we withdraw the entire opinion and substitute therefor the following, which consists of much of the earlier opinion with the changes deemed advisable.

In a personal injury action by appellant, the court sustained a demurrer to an amended petition on the ground that it showed plaintiff guilty of contributory negligence. Declining to plead further, judgment was entered for defendant (appellee) and plaintiff appeals.

The outline of this petition is as follows: Plaintiff was a strong, able-bodied man in good condition with long experience in boarding moving trains and vehicles. He was a passenger on defendant's train—his passage being from Cleveland to Chicago. He was riding in a day coach at the rear of the train which was otherwise made

up of pullmans—all platforms being vestibuled. The train stopped en route at Toledo about 1 o'clock a. m. When the train stopped, the day coach was a "few cars" distant from a walkway leading into the station. Many persons alighted from the coach and pullmans and some went into the station. Plaintiff alighted (leaving his ticket and luggage in the car) and walked along the platform to the walkway leading into the station. At that point, he talked with an employee of defendant who, in response to inquiry, told him the train would remain thirty minutes. He then started into the station, but because another train pulled in and stopped between him and his train, he went back around this train to the platform at the side of his train to go to his car—this about sixteen minutes after his train stopped. When he was yet several car lengths from his car, the train started without warning. At this time the vestibules of the intervening pullmans were closed. Realizing that the train was moving, that his ticket and luggage were on it, and that he could not enter by the pullmans, plaintiff became confused and greatly excited and hurried toward the rear so as to get to his coach while the train was moving slowly and the vestibule door thereto was still open. As his car approached, the vestibule was open and, just before he attempted to board, a trainman entered there and went into the coach. While excited and fearing his "luggage and valuable belongings" would be carried on and he left behind, he endeavored to board the train which was moving not more than five miles an hour and could have been safely boarded by him "when there was a jerk or lunge forward of said train without warning" which caused him to lose his hold and fall, occasioning the injuries in suit.

There were five claimed grounds of negligence, each of which was alleged to be "an independent proximate and efficient cause from which plaintiff fell from the steps of said coach." They are as follows: (1) That defendant, without reasonable warning to plaintiff, started and kept the train in motion, when it knew or by "exercise of due care could have known" that plaintiff was not on the train, could not get on at the pullman vestibules, and would "make all reasonable effort to get back on said day coach if the vestibule was left open." (2) That defendant started the train before the time its employee had erroneously informed plaintiff it would be started, "when by the exercise of due care it could have known" that he was not on the train, could board only at the day coach, and would make every reasonable effort to board the coach while it was in motion and with the vestibule open. (3) That defendant started the train without reasonable warning, after giving the plaintiff the above erroneous information and when "by due care it could have known" he was not in the day coach, could not board any other portion of the train, and that so to start the train would likely create an emergency to plaintiff and throw him "into a state of excitement and confusion" in which he would make all reasonable effort to board at the lighted and open day coach vestibule—that because of this situation, plaintiff did become excited and confused and attempted to board the train at that vestibule and was caused to fall. (4) That without warning the train was caused to jerk suddenly, when defendant knew plaintiff had gotten off of and "by the exercise of due care under the circumstances could have known" that he had not re-entered the day coach, could not board the train elsewhere, would likely get upon the steps of said coach while the vestibule was lighted and open, thus putting himself in a position of being caused to fall by any sudden jerk or sudden increase of speed of the train. (5) That defendant started the train when it knew plaintiff had gone toward the station about fifteen minutes before the train started and knew "or by due care could have known" that he was not on the coach when it started and knew he could not board the train elsewhere and knew that by so starting the train under the circumstances and with plaintiff's luggage and ticket in the coach he would be thrown into a state of excitement and confusion and seized with a very strong impulse to get on the coach when it came along lighted up with vestibule open "and especially if some one got on said coach in sight of and while it was near" him—that such excitement, confusion, and impulse came to plaintiff without "time for calm deliberation and choice to abandon said train" and under the influence thereof and seeing a man so get on ahead of him, he got on the steps and "was so thrown and caused to fall therefrom."

Allegations as to specific negligence must be judged, as to their sufficiency, by reference to the situation as outlined in the petition because it must be assumed, on demurrer, that such situation is true as he

states it. That situation is, briefly, that knowing (actually or constructively) that plaintiff was not on the train and that, by starting the train without warning before it had told plaintiff it would be started and by leaving but one vestibule open and lighted at the rear of the train, defendant imposed upon plaintiff an unexpected situation which it knew (actually or constructively) would result in his excitement and confusion and where he would be faced with a decision for quick action between attempting the natural action of trying to board the moving train at the only available place or not doing so; that, so placed and considering the slow speed, it was reasonable for him to think and he did think he could safely do this; that while in the attempt, the train gave a sudden jerk or acceleration causing him to fall. In this situation, the only wrongful acts of defendant are: (1) Through starting the train without warning, knowingly creating a situation which would naturally induce plaintiff to attempt to board the day coach, and (2) suddenly jerking or suddenly increasing the speed while he was so doing. Obviously, the former standing alone would have resulted in no injury because it was the jerk or increase of speed which was necessary, under the allegations, to cause the fall and without which the position of peril on the steps would have been harmless. It is really the combination of placing in peril and of the harmful act while in that position which expresses defendant's fault. While we are not prepared to accept some of the specific acts of alleged negligence as being sufficient or as being properly set out, yet we think this stated a cause of action in so far as negligence of defendant is concerned, and the trial court did not find otherwise.

The demurrer to this petition was general in its terms, to wit, "that the facts alleged * * * are not sufficient to constitute a cause of action against this defendant." In sustaining the demurrer, the trial court said:

"Plaintiff knew that the train was in motion when he attempted to board it. In Palen v. Wheelock et al., 13 F.(2d) 34, loc. cit. 36, the Eighth Circuit Court of Appeals, in deciding a similar case, where the accident occurred in the state of Illinois, said:

" 'Undertaking to board a train while it is in motion, proceeding out of a station with quickly increasing speed, and with the trap door closed down over the steps is a negligent act per se in the absence of circumstances which excuse the act.'

"The Court cited many cases in support of this doctrine. The court particularly quoted from Solomon, Administratrix, v. Manhattan R. Co., 103 N.Y. 437, 9 N.E. 430, 432, 57 Am.Rep. 760, as follows:

" 'It is, we think, the general rule of law, established by the decisions in this and other states * * * that the boarding or alighting from a moving train is presumably and generally a negligent act per se; and that, in order to rebut this presumption, and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternate dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered, to some extent, with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety.'

"The petition in this case lacks an averment which would rebut the presumption of negligence on the part of the plaintiff or that in any way would justify him in attempting to board a moving train."

The first issue here is whether the law of the forum or that of the place of occurrence (Ohio) controls in determining the existence vel non of contributory negligence per se. Appellee contends for the law of Ohio while appellant insists this is a liability at common law, as to which the jurisdiction of the trial court was co-ordinate with and not subject to the courts of Ohio. In a sense, both of these opposed positions are correct. In Young v. Masci, 289 U.S. 253, 258, 53 S.Ct. 599, 601, 77 L.Ed. 1158, 88 A.L.R. 170, the court said: "Liability for a tort depends upon the law of the place of the injury." Such law is either written (Constitutions or statutes) or unwritten (judicial decision). The written law of a state is what the highest court of the state construes it to be and such construction is accepted by federal courts whether such law control torts (Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170) or other matters (see citations in Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, at pages 530 and 531, 48 S.Ct. 404, at

pages 407 and 408, 72 L.Ed. 681, 57 A.L.R. 426). But "for the discovery of common-law principles applicable in any case, investigation is not limited to the decisions of the courts of the state in which the controversy arises. State and federal courts go to the same sources for evidence of the existing applicable rule. The effort of both is to ascertain that rule. * * * As respects the rule of decision to be followed by federal courts, distinction has always been made between statutes of a state and the decisions of its courts°on questions of general law. The applicable rule sustained by many decisions of this court is that, in determining questions of general law, the federal courts, while inclining to follow the decisions of the courts of the state in which the controversy arises, are free to exercise their own independent judgment." Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 529, 48 S.Ct. 404, 407, 72 L.Ed. 681, 57 A.L.R. 426. As instances of the rule last above quoted, the court in that opinion (276 U.S. 518, at pages 530 and 531, 48 S.Ct. 404, at pages 407 and 408, 72 L.Ed. 681, 57 A.L.R. 426) cites four negligence cases, among others. Also see Snare & Triest Co. v. Friedman, 169 F. 1, 10, 40 L.R.A.(N. S.) 367 (C.C.A.3), and Chesko v. Delaware & Hudson Co., 218 F. 804, 806 (C.C.A.3). The result of the above rules is that this court must determine for itself the rule as to this common-law contributory negligence.

■ The common law is, as to federal courts, the same in all states. In Palen v. Wheelock, 13 F.(2d) 34, 36, this court said: "Undertaking to board a train while it is in motion, proceeding out of a station with quickly increasing speed, and with the trap door closed down over the steps is a negligent act per se in the absence of circumstances which excuse the act." This statement includes two important elements (rapidly increasing speed and closed trap door—as to latter see Norfolk & A. Terminal Co. v. Rotolo, 191 F. 4, at page 8 (C.C.A.4), not here present but, even with such inclusion, it is stated that such act is per se negligence only with the qualification "in the absence of circumstances which excuse the act." Later in the opinion and evidently with approval, the court quotes from Solomon v. Manhattan R. Co., 103 N.Y. 437, 9 N.E. 430, 57 Am.Rep. 760, to the effect that:

"The boarding or alighting from a moving train is presumably and generally a negligent act per se, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."

This quotation from the Solomon Case was entirely appropriate to the fact situation before this court in the Palen Case where the quotation occurred. It seems clear that the present petition had in mind this rule thus announced in the quotation from the Solomon Case. The petition is within that rule—at least the portion "that something was done or said, * * * or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."

■ In this matter our concern is not with negligence of defendant, but with contributory negligence of plaintiff. We are not here interested in the duties of defendant to plaintiff, but the duty of plaintiff to himself as affecting the defendant. From that viewpoint, the allegations of the amended petition must be examined and determined. The situation of the plaintiff when he sought to board the day coach is revealed in this petition as follows. Plaintiff, a strong able-bodied man, experienced in boarding moving trains, dismounts at a way station leaving his ticket and valuable luggage in the car. Before leaving the vicinity of the train, he inquires of an employee standing near the train and is told the train will remain there for thirty minutes. He then proceeds toward the station to procure refreshments. While so doing, he observes that another train has come in and stopped between him and his train. Thereupon he changes his mind and returns around that train to the station platform alongside his train on the way to his coach which is several cars away at the rear of the train. Without warning, his train starts about fourteen minutes before the time he has

been informed it would leave. That this unexpected happening operating on him under these conditions and in this situation caused him to become confused and greatly excited. In this state of mind he attempted to board the train between two pullmans near him, but finding the vestibule closed he hurried toward the rear of the train so as to get aboard his coach if that vestibule was not closed. That just before this coach reached . him, a trainman boarded there and passed into the coach leaving the vestibule open. That the train was going slowly—about five miles an hour—when the open vestibule reached him. Then, thinking he could safely board the train and acting with reasonable care, he took hold of the hand iron with his right hand and put his left foot on the car step and, as he straightened up and was placing his other foot and grasping the other handhold with his left hand, he was thrown by a sudden jerk or by a sudden acceleration of speed.

It seems to us that these are allegations which, if proven, would bring plaintiff within the quotation from the Solomon Case (made in the Palen Case) "that something was done or said, * * * or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."

The situation here does not require and we expressly refrain from examining or determining whether there is a presumption of contributory negligence arising from the bare fact that a person attempts to board a moving train. What we do determine is that even if there be such presumption, this plaintiff has pleaded matters which, if supported by evidence, would justify submitting to a jury the issue of contributory negligence. Where persons are suddenly confronted with unusual conditions, their conduct must be judged having in mind the natural and actual effect upon them of the situation thus created and existing. Such conditions are "surrounding circumstances" to be considered in determining whether their acts have been reasonably careful. Union Pac. Ry. Co. v. McDonald, 152 U.S. 262, 281, 282, 14 S.Ct. 619, 38 L.Ed. 434; Vigil v. Atchison, T. & S. F. Ry. Co., 261 F. 313, 316 (C.C.A.8); National Life Ins. Co. v. McKenna, 226 F. 165, 168 (C.C.A.8); Vascacillas v. Southern Pac. Co., 247 F. 8, 12 (C.C.A.9).

The judgment is reversed and the case remanded with instructions to set aside the judgment and grant a new trial.